## MARTIN *v.* COLE.

1. In an action against a party upon his indorsement in blank of a negotiable promissory note, evidence of a contemporaneous parol agreement that the indorsement was without recourse is inadmissible.

2. The ruling in *Wills* v. *Claflin* (92 U. S. 135), construing a statute which requires the assignee of a promissory note to exhaust his remedy against the maker before proceeding against the assignor, reaffirmed.

3. In this case, the question whether an execution, sued out on a judgment recovered by the assignee against the maker of the note, would have been unavailing, is, for the purpose of fixing the liability of the assignor, determined by the finding below that the maker was insolvent.

ERROR to the Supreme Court of the Territory of Colorado. The facts are stated in the opinion of the court.

*Mr. Henry M. Teller* for the plaintiff in error.

No counsel appeared for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant in error was plaintiff below, and brought his action of assumpsit against the plaintiff in error, as indorser of a promissory note, in the District Court of the First Judicial District of Colorado Territory, for the county of Arapahoe, the plaintiff below being the immediate indorsee.

A copy of the note sued on, with the indorsements, filed with the declaration, is as follows : —

" $1,414.15.          GEORGETOWN, C. T., July 17, 1868.

." On or before eighteen months after date, I promise to pay to John H. Martin, or order, the sum of fourteen hundred and fourteen $\frac{15}{100}$ dollars, for value received, at George I. Clark & Co.'s bank at Georgetown, with interest at the rate of three per cent per month from date until paid.

(Signed)       "JOHN WEBB."

[Indorsed on back.]

" Pay to the order of Luther A. Cole. Value received.

(Signed)       "JOHN H. MARTIN."

The declaration, besides the common money counts, contained five special counts.

· In the first of them it is averred that the note sued on being unpaid, on Feb. 5, 1870, the plaintiff instituted suit thereon against the maker, at the first term of the court in the county of his residence after the maturity thereof, and at the same term, on April 7, 1870, recovered judgment thereon against him for $2,284, together with costs; that upon said judgment he afterwards, on May 9, 1870, caused to be issued, and placed in the hands of the sheriff, an execution, which, on June 6, 1870, he made return of, showing that on May 9, 1870, he had levied the same on certain mining claims of the defendant, which, on June 1, 1870, he had sold according to law for the sum of $5, besides the costs of the suit, amounting to $45.75; and it is also in the same count further averred that, from the time of the rendition of the judgment against Webb, the maker of the note, he had no other property, either real or personal, subject to execution, out of which the balance of the judgment or any part of it could have been made, and that the keeping of the execution in the hands of the sheriff for the period of ninety days from its date, or the issuing of a pluries or other execution to collect the balance of said judgment, would have been wholly unavailing. There is also the further averment in the same count that the plaintiff used all due diligence to collect said note from the maker.

The second count of the declaration contains the averment that " at the time the said note became due and payable, and from that time up to the time of the commencement of this suit, and up to the present time, the said John Webb ever has

been, and still is, insolvent and unable to pay said note, and that the institution of a suit against the said John Webb at the time the said note became due, or at any time from the maturity of the said note until the present time, would have been, and was, and would be, entirely unavailing," &c.

These averments appear to have been made with a view to meet the requirements of sect. 7 of an act, then in force, of the Territory of Colorado, relating to bonds, bills, and promissory notes, which is referred to in the brief of one of the counsel as found on page 85 of the Revised Statutes of Colorado of 1868, but which, in disregard of the rules of this court, is not set out either in the record of the case or in the brief of counsel. The volume referred to not being accessible, we find what we assume to be a republication of the same provision in the General Laws of the State of Colorado, published by authority in the year 1877. It is as follows: —

"SECT. 7. Every assignor, or his heirs, executors, or administrators, of every such note, bond, bill, or other instrument in writing, shall be liable to the action of the assignee thereof, or his executors or administrators, if such assignee shall have acted with diligence, by the institution and prosecution of a suit against the maker of such assigned note, bond, bill, or other instrument of writing, or against his heirs, executors, or administrators, for the recovery of the money or property due thereon, or damages in lieu thereof: *Provided*, that if the institution of such suit would have been unavailing, or if the maker had absconded or left the State, when such assigned note, bond, bill, or other instrument in writing became due, such assignee, or his executors or administrators, may recover against the assignor, or against his executors or administrators, as if due diligence by suit had been used."

The plaintiff in error, in addition to the general issue, filed a special plea to the first and second counts of the declaration, the substance of which is as follows : —

" And the said defendant avers that he made the said indorsement when it was so made, in blank, that is to say, by writing his name across the back of said promissory note, and that he made said indorsement with the express agreement by and between him and the said plaintiff, the said Luther A. Cole, that the said indorsement should never be filled up so

as to make this defendant liable in any manner upon the said indorsement, but only to enable the said plaintiff to sue the said note in his own name, if suit thereon should become necessary. And this defendant avers that, relying upon the assurance of the said plaintiff that his indorsement should not be filled up so as to render him liable as indorsee thereon, he signed his name upon the back of said note, which without said assurance he would not have done."

To this plea there was filed a general demurrer, which was sustained.

Afterwards, on June 6, 1874, the cause was submitted, by consent of parties, without the intervention of a jury, when the court found the issues in favor of the plaintiff, and rendered judgment against the defendant for $2,478.17 damages and costs.

A bill of exceptions was taken, which sets out all the evidence given and offered in the trial of the case. From that it appears that the defendant below, Martin, being on the stand as a witness in his own behalf, was asked to state under what circumstances the note in suit was transferred by him to the plaintiff, Cole. Objection being interposed, the defendant then stated to the court that he offered to prove in defence a parol promise contemporaneous with the indorsement of the note; that he proposed to prove by the witness that the parol agreement set forth and stated in the defendant's second plea was made by the parties. The court sustained the objection, and the defendant excepted.

Thereupon the defendant offered to prove that at the time the note was transferred by Martin to Cole it was expressly agreed between them that Martin should indorse his name on the note in blank to enable Cole to collect it in his own name, and that Cole agreed then, in consideration of what he had given for the note, that he (Martin) was never to be called upon as indorser or guarantor of its payment in the event he failed to collect it from the maker of the note; to which offer an objection, interposed by the plaintiff, was sustained, and the defendant excepted.

The defendant had previously testified that his name on the back of the note was written by him, but that the words "Pay

to the order of Luther A. Cole, value rec'd," were not written at the time of the indorsement and delivery of the note, nor by him at any time.

The plaintiff below read in evidence the depositions of William L. Campbell, Levi H. Shepperd, and John T. Harris, tending to prove the insolvency of Webb, the maker of the note, at and after its maturity. Objections were made to their depositions, and overruled; to which an exception was taken. The objections, however, do not appear to be of sufficient importance to require further notice.

The plaintiff also read in evidence the transcript of the record, judgment, and proceedings in the action of Luther A. Cole against John Webb, the maker of the note, together with the execution, levy, and return, being the same referred to in the first count of the declaration. From that it appears that the execution was issued on May 9, 1870, returnable in ninety days from date, and actually returned on June 7, 1870, showing the levy and sale referred to in the pleadings.

There was other testimony, also, tending to prove the insolvency of Webb, the maker of the note, at and after its maturity, and at the time of the bringing of this action.

An appeal was taken from the judgment of the District Court of the First Judicial District of the County of Arapahoe to the Supreme Court of Colorado Territory, in which, at the February Term, 1875, errors were assigned, and the judgment was affirmed in that court on March 28, 1876.

To reverse that judgment is the object of the present writ of error.

The agreement set out and relied on in the plea was that " the said indorsement should never be filled up so as to make this defendant liable in any manner upon the said indorsement, but only to enable the said plaintiff to sue the said note in his own name, if suit thereon should become necessary." And the defendant averred that " he, relying upon the assurance of the said plaintiff that his indorsement would not be filled up so as to render him liable as indorser thereon, signed his name upon the back of said note, which without said assurance he would not have done." As the indorsement in blank, admitted by the defendant to have been made by him, without being

filled up by the plaintiff at all, rendered him liable for the payment of the note as an indorser, the breach by the plaintiff of the alleged agreement was inconsequential, and could not, in law, result in any actionable injury; for filling up the blank indorsement in the manner in which it was done neither added to nor subtracted from the liability which the defendant assumed by merely writing his name on the back of the note.

The defendant below, however, further offered at the trial to prove that at the time the note was transferred by Martin to Cole it was expressly agreed between them that Martin should indorse his name on the note in blank, to enable Cole to collect it in his own name, and that Cole agreed then, in consideration of what he had given for the note, that he (Martin) was never to be called upon as indorser or guarantor of its payment in the event he failed to collect it from the maker of the note. No question was made at the time, nor has been raised since, as to the admissibility of such proof under a plea of the general issue; and waiving any objection on that account, the rejection by the court below of this offer fairly raises the issue intended to have been made by the special plea, whether it is competent, in an action against an indorser by his immediate indorsee, upon an indorsement made in blank of a negotiable promissory note, to prove, as a defence, that as part of the transaction it was agreed between the parties, but not in writing, that it should merely have the legal effect of an indorsement expressed to be without recourse.

It has never been contended that such a defence, based on dealings between prior parties, could be maintained to defeat the title of a *bona fide* holder for value of negotiable paper, acquired before maturity, in the usual course of business, and without notice; for the protection of such a title is of the essence of the policy of the law merchant, and inheres in the very definition of negotiability. Hence, in that case, a collateral but contemporaneous written agreement between two prior parties to a bill or note would not affect its validity in the hands of the holder, more than if the agreement were unwritten. Whereas, between the immediate parties, if the agreement relied on were in writing, its terms would fix and

determine their rights and obligations, as was decided by this court in *Davis v. Brown*, 94 U. S. 427. The question is between them alone ; and is, whether the same effect will be given to such an agreement, not reduced to writing.

The ground of decision must be found in some other principle or policy of the law than that which protects the title of a remote innocent holder of negotiable paper.

Accordingly, Mr. Justice Washington, in *Susquehanna Bridge & Bank Co.* v. *Evans* (4 Wash. 480), after admitting proof of such an agreement, in an action by the holder of a promissory note against his immediate indorser, said, in his charge to the jury : —

" The reasons which forbid the admission of parol evidence to alter or explain written agreements and other instruments do not apply to those contracts implied by operation of law, such as that which the law implies in respect to the indorser of a note of hand. The evidence of the agreement made between the plaintiffs and defendants, whereby the latter were to be discharged on the happening of a particular event, was, therefore, properly admitted."

It is upon this distinction between contracts express and implied that those judicial tribunals have proceeded, in which such proof is held to be admissible. It is declared, for example, by the Supreme Court of Pennsylvania, in *Ross* v. *Espy* (66 Pa. St. 481, 483), that " the contract of indorsement is one *implied* by the law from the blank indorsement, and can be qualified by express proof of a different agreement between the parties, and is not subject to the rule which excludes the proof to alter or vary the terms of an *express* agreement."

So in an early case in New Jersey, *Johnson* v. *Martinus* (9 N. J. L. 144), it was held by the Supreme Court of that State that parol evidence was competent to overcome the implied contract which results from a blank indorsement, on the ground that such indorsement is an inchoate or imperfect contract and not a written instrument, nor entitled to its effect, protection, or immunity.

This case, however, was expressly overruled by the same court in *Chaddock* v. *Vanness* (35 id. 517), in which it is plainly indicated that the distinction attempted to be made,

in some of the cases, between indorsements in full and those which are in blank, is untenable.

The contract created by the indorsement and delivery of a negotiable note, even between the immediate parties to it, is a commercial contract, and is not in any proper sense a contract implied by the law, much less an inchoate or imperfect contract. It is an express contract, and is in writing, some of the terms of which, according to the custom of merchants and for the convenience of commerce, are usually omitted, but not the less on that account perfectly understood. All its terms are certain, fixed, and definite, and, when necessary, supplied by that common knowledge, based on universal custom, which has made it both safe and convenient to rest the rights and obligations of parties to such instruments upon an abbreviation. So that the mere name of the indorser, signed upon the back of a negotiable instrument, conveys and expresses his meaning and intention as fully and completely as if he had written out the customary obligation of his contract in full.

It is spoken of by Wharton (Law of Evidence, &c., sect. 1059) as a contract *at short-hand.* The same view is taken in Daniels on Negotiable Instruments, sect. 718, where the author states, as a resulting conclusion that embodies the true principle applicable to the subject, that, " in an action by immediate indorsee against an indorser, no evidence is admissible that would not be admissible in a suit by a party in privity with the drawer, against him." If the commercial contract of indorsement is treated as a contract in writing, this conclusion is undoubtedly correct. If it is not, we have the anomaly of applying one rule between maker and payee, and a different one between payee becoming indorser and his immediate indorsee, without any difference to justify it, in the relation of the parties to each other in the two cases.

The rule is tersely stated in Benjamin's Chalmer's Digest of the Law of Bills of Exchange, &c., art. 56, p. 63.

" The contracts on a bill, as interpreted by the law merchant, are contracts in writing. Extrinsic evidence is not admissible to contradict or vary their effect." Citing *Abrey* v. *Crux,* 5 Law Rep. C. P. 37.

The rule as declared by Mr. Justice Washington in the case

cited was expressly rejected by this court in *Bank of the United States* v. *Dunn* (6 Pet. 51), one distinct ground of its opinion being that parol evidence is not admissible to vary a written agreement ; citing the language of the court in *Renner* v. *Bank of Columbia*, 9 Wheat. 581, 587 : "For there is no rule of law better settled or more salutary in its application to con-- tracts, than that which precludes the admission of parol evidence to contradict or substantially vary *the legal import* of a written agreement."

The authority of this case on this point has never been questioned in this court, the explanation and qualification in *Davis* v. *Brown* (*supra*) having reference only to the rule as to the competency of an indorser as a witness to impeach the validity of a negotiable instrument to which he is a party. In the case last referred to, the agreement relied on to qualify the instrument was admitted because it was in writing and part of the transaction.

The case of *Bank of the United States* v. *Dunn* (*supra*) is cited as an authority upon the point in *Phillips* v. *Preston* (5 How. 278, 291), "because, in an action on a note, parol testimony is not competent to vary its written terms, and probably not to vary a blank indorsement by the payee from what the law imports."

It is also referred to in terms and followed in *Brown* v. *Wiley*, 20 id. 442. In delivering the opinion of the court in that case Mr. Justice Grier used this language : —

"When the operation of a contract is clearly settled by general principles of law, it is taken to be the true sense of the contracting parties. This is not only a positive rule of the common law, but it is a general principle in the construction of contracts. Some precedents to the contrary may be found in some of our States, originating in hard cases ; but they are generally overruled by the same tribunals from which they emanated, on experience of the evil consequences flowing from a relaxation of the rule. There is no ambiguity arising in this case which needs explanation. By the face of the bill the owner of it had a right to demand acceptance immediately, and to protest it for non-acceptance. The proof of a parol contract, that it should not be presentable till a distant, uncer-

tain, or undefined period, tended to alter and vary, in a very material degree, its operation and effect. See *Thompson* v. *Ketchum*, 8 Johns. 192."

The action in this case, it is true, was between the payee and drawer, upon a bill of exchange; but the obligation on which it was founded, that the drawer would pay in the event of non-acceptance by the drawee, notice of dishonor and protest, is one not actually expressed in terms in the bill itself, but imported by construction of law, as constituting the operation and effect of the contract.

In *Specht* v. *Howard* (16 Wall. 564), Mr. Justice Swayne, delivering the opinion of the court, quotes from Parsons on Notes and Bills, 501, that "It is a firmly settled principle that parol evidence of an oral agreement alleged to have been made at the time of the drawing, making, or indorsing of a bill or note, cannot be permitted to vary, qualify, or contradict, to add to or subtract from, the absolute terms of the written contract."

The same quotation forms part of the opinion in *Forsythe* v. *Kimball* (91 U. S. 291), with the addition that, in the absence of fraud, accident, or mistake, the rule is the same in equity as at law.

The same principle, upon the authority of these cases, was affirmed by this court in *Brown* v. *Spofford* (95 id. 474), and is assumed to be the law in *Cox* v. *National Bank* (100 id. 704), and *Brent's Ex'rs* v. *Bank of the Metropolis*, 1 Pet. 89.

In view of this line of decisions, the question, as it arises in this case, cannot now be considered an open one in this court.

It coincides with the rule adopted and applied in most of the States, but the cases are too numerous for citation. They will be found collected, however, in Bigelow, Bills and Notes, 168; Byles, Bills (6th Am. ed.), Sharswood's note, 157; 1 Daniel, Negotiable Instruments, sects. 80, 717 *et seq.*; 2 Wharton, Evidence, sect. 1058 *et seq.*; Benjamin's Chalmer's Digest of the Law of Bills of Exchange, art. 56, p. 63.

Of course there are many distinctions which, upon the circumstances of cases, determine the applicability of the rule, and classes of cases which form apparent exceptions to it. It is not necessary to refer to them here, further than to say that

the limitations of the rule are perfectly consistent with it, and its application in this, as in other proper cases, will not be considered as encroaching upon them.

The opinion of the Supreme Court of Colorado Territory, affirming the judgment of the District Court, expressly declines to pass upon the question whether the evidence showed that. the property of Webb, the maker of the note, was exhausted or not, because no exception was taken to the finding and judgment of the court. Our attention is called by counsel to a stipulation, filed in the Supreme Court of Colorado, by which the omission to insert the exception agreed to have been taken at the time, in the bill of exceptions, was intended to be cured; which, it seems, could not have come to the knowledge of that court. But the consideration of the exception does not avail the plaintiff in error. The record shows abundant evidence to sustain the finding complained of. Even if the point made were well taken, that where, under the statute of Colorado requiring a prosecution of the maker to the end of an execution, it is necessary that the execution should be kept in force for the full period given by law for its return, in order to establish due diligence, nevertheless, in the present record, there is shown, in our opinion, evidence to justify a finding in favor of the plaintiff below, even although no execution had been issued against the maker of the note. It clearly appears that it would have been unavailing on account of his insolvency. In *Wills* v. *Claflin* (92 U. S. 135), under a statute of Illinois, containing a provision identical with that in the Colorado statute, from which, indeed, the latter is said to have been copied, it was held that if the maker of the note was insolvent, so that a suit against him would be unavailing, the failure to institute it would furnish no defence to the indorser. That, indeed, is the plain language of the law itself.

We find no error in the record.

*Judgment affirmed.*