## CALM et al. v. DOLLEY.

(Circuit Court, E. D. Pennsylvania. January 7, 1901.)

### No. 19.

PROMISSORY NOTES—ACTIONS—DEFENSES.

In an action on a promissory note by plaintiffs who allege that they are bona fide indorsers for value before maturity, an affidavit of defense which does not deny such allegation, but sets up an oral agreement between defendant and the payee at the time the note was signed that defendant should not be held liable thereon, and that the payee then stated that such arrangement was satisfactory to his brother (one of the plaintiffs), is insufficient, even conceding that such agreement could be proved, to affect the note, since it fails to show that plaintiffs were parties to the agreement, or to aver that they had notice of it before acquiring title to the note.

Rule for Judgment for Want of a Sufficient Affidavit of Defense.

Jacob Singer, for plaintiff.

Albert B. Weimer, for defendant.

J. B. McPHERSON, District Judge. The plaintiffs in this suit aver themselves to be bona fide indorsees for value, before maturity, of a promissory note of which the defendant is the maker, and the pending motion. raises the question whether the following affidavit of defense is sufficient to prevent a summary judgment:

"I, Charles S. Dolley, defendant above named, have a full, true, and complete defense in the above suit, as follows:

"I filed in the United States patent office on October 21, 1896, an application for a 'process of tanning' (No. 609,600), which application was thrown into interference with several other applications covering closely allied processes. Among these was one for 'the treatment of hides,' by Edward Calm, of New York, filed November 19, 1896 (No. 612,701).

"These interferences were contested, and gradually overcome, the one with Calm being dissolved by decision of the commissioner of patents on May 23, 1899, whereupon Mr. Calm entered a new and amended application, which was in turn thrown into interference with my pending application.

"On December 4, 1897, I sold to Mr. James F. Crank, of the city of Los 'Angeles, California, an undivided one-half of all my right, title, and interest in and to the said pending application and to certain foreign patents covering the same process. Mr. Crank covenanted to 'use the utmost diligence in procuring purchasers for said patents and applications, and to pay all expenses necessary for the speedy and successful sale of said applications and patents.'

"In June, 1899, Mr. Crank had, as he thought, perfected arrangements for the. sale of the process in the United States, and was anxious that the pending

interference should be dissolved, and the patent be issued as promptly as possible. He thereupon opened up negotiations with Mr. Edward Calm, one of the parties to the interference, and arranged terms with him according to which Calm should concede priority of invention, and allow my application to go to issue.

"On or about June 29, 1899, Mr. Crank and Mr. Franklin H. Hough, of Washington, D. C., patent attorney in charge of my application, met Mr. Edward Calm in New York City, and between that date and July 8, 1899, closed an agreement with Mr. Calm, whereupon he conceded priority, giving the papers to Mr. Crank, who forwarded them to Mr. Hough's brother in Washington, by whom they were filed with the examiner of interferences on July 10, 1899. The interference was then dissolved, and on July 13th my patent was formally allowed, and was issued August 8, 1899 (No. 630,494).

"On July 10, 1899, I went to New York City, and, together with Mr. Crank and Mr. Hough, met Mr. Edward Calm at the office of his attorney, Mr. J. E. M. Bowen, where Mr. Crank paid Mr. Calm the sum of $2,500, one-half of the consideration for his concession, and where the note in suit for the balance of, $2,500 was prepared, which I was requested to sign with the understanding that my signature was necessary, owing to my being the party to whom the concession of priority had been made, but that Mr. Crank, who had made the negotiation, and who had paid Mr. Calm $2,500, was to be responsible for the payment of the note.

"I stated clearly at the time, and it was understood by all parties, that I was unable to pay this note, and that they were to look to Mr. Crank for payment.

"In accordance with this understanding, no references were asked of me, but Mr. Edward Calm requested Mr. Crank to accompany him to his brother's office, stating that, if he satisfied his brother of his (Mr. Crank's) responsibility, he would be satisfied.

"Whereupon Mr. Edward Calm and Mr. Crank went together to see Mr. Maximilian Calm, one of the plaintiffs above named, and certain parties to whom Mr. Crank referred as to his business standing and ability to pay the note. During their absence I remained in Mr. Bowen's office. They returned in the course of an hour, and I was assured by Mr. Edward Calm that everything was satisfactory, and that both he and his brother, Maximilian Calm, were content to look to Mr. Crank for payment of the note.

"Under these conditions I signed the note, which was indorsed by Mr. Crank, and, but for this understanding, I would not have been induced to sign the note.

"All of which I expect to be able to prove at the trial."

The affidavit does not deny that the plaintiffs are bona fide holders for value, before maturity, and this must, therefore, be accepted as true. The essential averments of the affidavit are that, when the defendant signed the note, it was "understood by all parties that [he] was unable to pay this note, and that they were to look to Mr. Crank for payment"; and, further, that the defendant was assured by Edward Calm, who is not one of the plaintiff firm, that "everything was satisfactory, and that both he and his brother, Maximilian Calm, were content to look to Mr. Crank for payment of the note. Under these conditions I signed the note, which was indorsed by Mr. Crank, and, but for this understanding, I would not have been induced to sign the note."

In my opinion, neither of these averments is sufficient to prevent judgment, even if the Pennsylvania decisions were binding on this court upon a question of general commercial law. Both averments are fatally defective, because the first does not declare that the plaintiffs were parties to the understanding that the defendant was not to be bound by his contract of indorsement, and because the second

does not declare that the plaintiffs, before acquiring title, knew that the note had been signed with such an understanding. The affidavit shows clearly that the plaintiffs were not present when the alleged understanding. was entered into; and the averment that Edward Calm, who was not a member of the plaintiff firm, informed the defendant that the plaintiffs would look to Mr. Crank only for payment of the note is an averment of incompetent hearsay evidence that cannot be considered. The defendant nowhere alleges that the plaintiffs had notice of the understanding that he was not to be called upon to pay the note, but only makes oath that he was informed that they had received such notice; and this is, of course, a different matter. I think it cannot be denied that without actual notice the indorsees could not be bound by an unknown agreement of the original parties. None of the cases cited by the defendant goes so far as to hold that a bona fide indorsee, for value, of negotiable paper, before maturity, can be affected by an agreement of which he had no notice that was intended to relieve the maker from liability. How extensive the scope of the Pennsylvania rule may be that permits evidence to be given concerning a parol agreement made at the time a written instrument was executed, when such agreement was the inducement that led to the signing of the instrument (Iron Co. v. Willing, 180 Pa. St. 165, 36 Atl. 737), it is unnecessary now to decide; for I think it is clear that such a parol agreement as is now set up cannot be proved in the federal courts at all (Martin v. Cole, 104 U. S. 30, 26 L. Ed. 647), and, if provable in Pennsylvania, can only be enforced in an action between the parties to the parol agreement, or in an action brought by a subsequent holder with notice.

The rule for judgment is made absolute.