JULIUS KESSLER & CO. v. E. F. PERILLOUX & CO. et al.

(Circuit Court of Appeals, Fifth Circuit. October 3, 1904.)

No. 1,293.

1. PLEADING—SUFFICIENCY OF ANSWER.

> An answer in an action on promissory notes, which attempted to plead a breach by plaintiff of the contract pursuant to which the notes were executed, construed, and *held* insufficient for want of certainty to state any defense, there being no allegation of any specific breach, nor statement in any issuable form of any liquidated indebtedness from plaintiff which would be applicable in compensation of the notes, either in whole or in part.

2. EVIDENCE—ENLARGING WRITTEN CONTRACT BY PAROL.

    Where a written contract is not ambiguous in its terms, Civ. Code La. art. 2276, which is declaratory of the rule obtaining both in the civil and common law, renders inadmissible parol evidence to show a different agreement, made either before or at the time of such contract, by which its scope was enlarged beyond its terms, or to give a construction of the contract by the witness variant from its written terms.

    Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

The plaintiff in error, Julius Kessler & Co., was, in 1900, and still is, a corporation created under the laws of West Virginia, with authority under its charter to operate distilleries, make and sell whisky and all other distillery products, with power to warehouse grain and distillery products as a general public warehouseman, and, as such, owned and operated a large number of distilleries in Kentucky and elsewhere outside of Louisiana, and sold and disposed of its manufactured whisky in interstate trade, and had a large quantity of whisky so held in bonded warehouse, subject to release from all government claim or possession on payment of the internal revenue tax of $1.10 per proof gallon, to be held in their own distillery bonded warehouses, to be released as soon as tax paid.

On the 20th of October, 1900, defendants in error, constituting the firm of Perilloux & Co., at New Orleans, entered into an agreement with the agents of plaintiff in error by which they purchased 225 barrels of whisky, in bond in the Kentucky distilleries, in the warehouses of plaintiff in error, such warehouses being, as above stated, also United States bonded distillery warehouses, situated in Kentucky, the whisky being non-tax paid.

The sale was for an agreed price for the whisky in bonded warehouse, non-tax paid, and defendants signed the following statement and memorandum of the sale, which is in the record, designated "Kessler-A," the following being a copy:

"Kessler-A.

"No. .......                  New Orleans, October 20th, 1900.

"Julius Kessler & Co. (Inc.), Ashland Block, Chicago—

"Gentlemen: I have this day bought of you through your Mr. Brady & Gerson 225 barrels of whisky in bond, and have received warehouse receipt covering said 225 barrels, as follows:

| W. H. R. No. | Brand | Age | Serial Nos. | P. G. | Pr. Gal. | Total |
|---|---|---|---|---|---|---|
| 42 | C O | 96 | | | 52 1-2 | $6168.76 |
| 50 | P Club | 96 | | | 60 | 1060.61 |
| 225 | O L C | 95 | | | 57 1-2 | 5108.15 |
| 50 | Atherton Ry | 95 | | | 60 | |
| 550 | Atherton Bourbon | | | | 57 1-2 | |

"Settlement:  Cash $......, and notes for $......, as follows:
             $......, due ......, 190–; $......, due ......, 190–.
"Terms: ...... 4 mo., ......, 6 mo., ...... 9 mo. ...... 190–. ...... 15,
      ...... 15, ......, 190–. $......, 18 ...... months. ...... 190–.
"Divided equally.
"Subject to the approval of your home office.

                             "E. F. Perilloux & Co."

At the time of this sale the total price of the goods sold, and the amount to be paid therefor in notes of defendants in error, could not be accurately stated, nor could a full description of brands, and amount of gallonage in proof gallons, be given as to the 225 barrels sold, and therefore was not set

out in this writing, for the reason that Mr. Brady, the agent of Kessler & Co., had not with him warehouse receipts for all of the brands purchased by defendants in error, and was compelled to write that corporation at Chicago for the required warehouse receipts, as well as for approval of the sale, and its terms by the proper officer of the corporation.

On the 27th of October, 1900, the sale having been approved, Kessler & Co. transmitted to Mr. Brady at New Orleans, he being their agent, warehouse receipts for 225 barrels of the whisky sold, also receipt for 2 barrels of whisky thrown in at the time of the sale. These receipts covered all of the goods purchased by defendants in error on October 20th, each receipt covering five barrels of whisky, with the exception of the one covering the two barrels given as bonus, and were all in the same form and subject to the same condition as the Atherton & Co. distillery whisky, as follows, to wit:

"8310                          J. M. Atherton & Co.                     Stored in
"Number                                                                        D
                                "New Haven, Kentucky.                   Warehouse.
    "[25 cents Int. Rev. Stamp Canceled.]
                                                "New Haven, Ky., Jan. 2, 1900.
    "Received and stored in our United States Bonded Distillery Warehouse of our Atherton Distillery No. 87 situated in New Haven in the 5th District of Kentucky, Five (5) Barrels Atherton Rye Whisky, to be held by us on storage and on account of and subject to the order of E. F. Perilloux & Co., deliverable only upon payment of the United States taxes and all other taxes and charges and storage on said whisky at the rate of five (5) cents per barrel per month, from date of entry and payment of the purchase price of said whisky or of the notes given therefor, and upon the return of this receipt properly endorsed and the written order of the holder thereof. Loss or damage by the elements, fire, riots, accidents, evaporation, leakage, shrinkage or natural decay shall be at the risk of the owner or holder of this receipt.
    "[Stamped on face:]   Storage and all charges paid to Nov. 1, 1900.

| Inspection. | Serial No. | Wine Gall. | Proof. | Proof Gall. | Warehouse Stamp. | U. S. Gauger. | Tax is Due. | Unbonded. |
|---|---|---|---|---|---|---|---|---|
| 1896 Month Jany. | 145676 7 8 9 145680 | 48.69 47.53 49.59 46.89 49.07 | 100 | 48.69 47.53 49.59 46.89 49.07 | 301371 2 3 4 301375 | S. W. Cofer | Jany. 1904. | |
| | | | | 241.77 | | | | |

    "[Stamped across face:]   Unbonded Dec. 12, 1902.
                                "Julius Kessler & Co. (Incorporated),
                                        "By Julius Kessler, President,
                    "Proprietors of the J. M. Atherton & Co., Distillery No. 87."

All of the receipts contained the so-called "purchase clause" as conditions of delivery.

With these receipts in his possession, Mr. Brady, for the plaintiff in error, completed the deal of October 20th on the 27th of October, 1900, by delivering warehouse receipts for the whisky to Perilloux & Co., when that firm, in payment therefor, as the purchase price thereof, at the same time delivered to plaintiff in error their promissory notes for the agreed price of the whisky contained in 225 barrels for which the warehouse receipts had been delivered (2 barrels of whisky seem to have been added to the 225 as bonus on the trade, making 227 barrels in all).

It does not appear that there was any difference or dispute between the parties as to the terms of payment, the defendants in error making their notes in the total sum of $5,086.10 as the total price payable for the goods.

The purchase price of the whisky was not paid in a single note for the entire amount of the price, but the price was divided up into sums satisfactory to defendants in error, and notes given for each amount. All were dated October 27, 1900, each being for a portion of the agreed purchase price, each note maturing at a different date, varying from 4 months to 18 months.

After the sale of the whisky had been concluded and the notes given for the goods delivered, as appears by the evidence made part of the record by bills of exception, the following further agreement was entered into, to wit:

"New Orleans, La., October 27, 1900.

"This agreement entered into this 27th day of October, by and between Julius Kessler & Co., of Chicago, New York and Louisville, Ky., parties of the first part, and E. F. Perilloux & Co., of New Orleans, parties of the second part.

"We agree to tax-pay at any time a reasonable amount of the goods bought by Perilloux & Co. from us this date, and at any time that it is necessary for Perilloux & Co. in their business to ask for an extension, we agree to grant it, the first 90 days without interest, and if extended beyond that time, to charge six per cent. interest.

"[Signed]                          Julius Kessler & Co.
"[Signed]                          E. F. Perilloux & Co."

This action was commenced December 31, 1901, by the ordinary form of petition on two unconditional promissory notes, one of the notes of date October 27, 1900, for $1,021.63, due 12 months after date, being one of the original series of notes given for the purchase price of the 225 barrels of whisky in bond; the other note of date July 30, 1901, for $999.50, due 3 months after date, is a renewal of one of the original purchase price notes, renewed at the request of defendants in error at the date of the maturity of the original note renewed.

On January 9, 1902, there was a plea of lis pendens. Before this plea was disposed of in any manner, and on the 25th of the same January, the defendants filed another plea of exception, setting up article 264 of the existing Constitution of Louisiana, given in the plea as follows:

"No domestic or foreign corporation will do any business in this state without having one or more known places of business and an authorized agent or agents in the state upon which process can be served."

By agreement of counsel those pleadings were tried by the court with written waiver of jury, and both overruled on February 18, 1902.

On application of counsel for defendants in error, the court opened the decree, and allowed the defendants to file a more extended and elaborate plea or exception attempting to cover the same ground, and this time verified under oath. The new pleading was tried and overruled February 19, 1902.

On March 19, 1902, the defendants filed another exception to the jurisdiction, in substance averring that there was no ratione persona jurisdiction, because, while the petition alleged that the plaintiff in error was a corporation created by West Virginia, the petition did not allege that the plaintiff corporation was not also a Louisiana-created corporation. This exception seems to have been acted on and overruled by the court on the 8th of April, 1902 (127 Fed. 1011). The defendants on April 10, 1902, filed a lengthy pleading entitled "Answer and Reconventional Demand." The matters averred and relief prayed for in this pleading are sufficiently set forth in the opinion of the court.

Under the petition and above-entitled answer and reconventional demand, the case proceeded to trial before the court and jury, resulting in a general verdict for the defendants, but no verdict on the reconventional demand of the defendants. During the trial exceptions were taken to the rulings of the court on the admission of evidence, to the directions to the jury, and to the refusal to give certain requested directions—all shown by duly certified bills of exception.

The plaintiff in error moved for a new trial, and the same was denied, whereupon this writ of error was sued out.

Henry L. Lazarus, Girault Farrar, and J. R. Beckwith, for plaintiff in error.

. Henry L. Garland, Jr., for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). The first and fifth assignments of error present the question whether the defendants in error's pleadings and defenses were sufficient to deny a verdict in favor of the plaintiff in error for the amount of the notes sued on, and to warrant one for the defendants in error. The sixth and eighth assignments of error present the same question, broadened to cover both pleadings and evidence. The second assignment of error is as follows:

"The Circuit Court erred in overruling the objections of the plaintiff to the introduction of parol testimony tendered by the defendants before the jury, which evidence tended to show what was said between the persons before or at the time of the making of the written contract, styled 'Kessler–A,' dated New Orleans, October 27, 1900, signed by both parties to this cause, and tending to vary or in any manner affect the terms of said written contract between the parties, and tending to show the construction of said written contract by the said defendants.

"The Circuit Court further erred at the trial in overruling the objections of the plaintiff to the production of parol testimony, tendered by the defendants before the jury, tending to vary, enlarge, control, and contradict the terms and conditions embodied in the unconditional written obligations of Perilloux & Co., evidenced by their notes of hand, which notes of hand are described in plaintiff's petition.

"The Circuit Court further erred in refusing to strike out all such parol proof, and in refusing to instruct the jury to disregard the answers of the witnesses for the defendants, tending to show their interpretations of said written contract of October 27, 1900, and tending to vary, contradict, and control the unconditional obligations evidenced by the notes of the defendants upon which suit was brought, and the consideration for which was established by the evidence of both parties to this cause."

The alleged answer commences with denying all allegations in the petition not thereafter admitted, but thereafter practically admits all the substantial allegations, i. e., execution, delivery, consideration, and nonpayment of the notes sued on. It does not plead compensation in whole or in part. Such defense cannot be considered unless specially pleaded. Rev. Code Prac. La. art. 367. It does not set out in any issuable form any liquidated indebtedness of the plaintiff in error which would be applicable in compensation of the notes sued on. Rev. Civ. Code La. art. 2209.

As a defense to the suit, the answer alleges that on or about October 27, 1900, which was the date of the note sued on, the defendants entered into a verbal contract with Kessler & Co. for the purchase and sale of a large quantity of whisky in bond, upon verbal terms and conditions then and there agreed upon. But the terms of this verbal contract are not set out further than, after admitting that the defendants have received and paid for some of the whisky, by alleging that the said Kessler & Co. agreed:

"(1) That it would extend to defendants facilities in the conduct of their business, and extend to them the customary credits and accommodations usual in the business.

"(2) That, by reason of the fact as stated, that said whiskies were sold at very near the cost of production, said Julius Kessler & Co. would take said whiskies or any part thereof off the hands of defendants at any time without loss to them."

The answer further avers that subsequently defendants demanded that a part of said contract should be reduced to writing, and that the following writing was accordingly entered into:

"New Orleans, La., Oct. 27, 1900.

"This agreement entered into this 27th day of October, by and between Julius Kessler & Company of Chicago, Illinois, New York and Louisville, Ky., parties of the first part, and E. F. Perilloux & Company of New Orleans, parties of the second part: we agree to tax pay at any time a reasonable amount of the goods bought by Perilloux & Company of us this date; and at any time that it is necessary for Perilloux & Company in their business to ask for an extension we agree to grant it, the first ninety days without interest and if extended beyond that time to charge 6 per cent. interest.

"[Signed]                                        Julius Kessler & Co.
                                                "E. F. Perilloux & Co."

Then follows the defendants' construction of the writing of October 27th, to the effect that they understood that writing to bind Kessler & Co. to prepay at any time all charges necessary to release from bond a reasonable amount of goods, even if the purchase price was not then and there paid, but for which the stated credit of 90 days without interest would be allowed, and, if a credit exceeding 90 days was allowed, said credit would bear 6 per cent. yearly interest. There is no averment as to what was "a reasonable amount of goods" to be cleared from bond without payment of price, or any averment that demands for reasonable amounts of goods had been refused compliance by the plaintiff in error. There is an averment that the plaintiff in error failed to carry out the verbal agreement, and also defaulted on the written agreement of October 27, 1900, and that the defendants have scrupulously abided by their agreements. It is further set up that at the time of entering into the contract of October 27, 1900, the defendants issued to plaintiff in error their several notes of hand as per exhibit alleged to be attached to the petition, but which is not found in the record in any way identified with the answer by date of filing or in any other manner. The notes so issued are said to amount in total to $6,146.71; of what date, for what consideration, or in what several amounts, or whether the notes sued on are included, is not averred. It is averred that all of these notes, except one of $1,021.63, alleged to have been paid by the defendants on March 2, 1901, were still out and unpaid. This is coupled with an averment that all of these notes, apparently not excluding the note paid, are without consideration, null, and void, having been issued pursuant to a. contract which has been violated openly and actively by said plaintiffs in error, and being for the price of whisky the delivery of which has not been made according to contract, but which delivery has been wrongfully refused. Whether the notes thus referred to are the notes in suit, we are left to infer. This allegation is followed by the averment that the warehouse receipts issued to the defendants by Kessler & Co. were mere certificates of purchase, and, if warehouse receipts in name were not such in law, and were not original receipts issued against the goods described. The balance of the answer seems

to be taken up with extraordinary claims in reconvention, which need not be considered.

Giving these allegations the most favorable consideration, we think they are insufficient, and so wanting in certainty as not to constitute any defense to the notes sued on. At best, they show an ineffectual attempt to set up breaches of a contract as a defense against promissory notes issued under an admitted contract, without fully setting out the contract, and without specifically assigning the breaches thereof. If they be considered as pleading such facts as would warrant a rescission of the admitted sale of the whisky on October 27, 1900, we find no prayer for any such relief, nor any sufficient case made to warrant such prayer. The defendants admitted the consumption of part of the whisky, and alleged an enhanced value of the balance, which would prevent a rescission, as there could be no restitution of the original position of parties.

On the trial the plaintiff below reserved exceptions to the rulings on admission of parol evidence affecting certain written contracts between the parties. Only one example need be given. The defendants had offered in evidence the written agreement of October 27, 1900, herein-before copied as produced in defendants' answer, and thereupon counsel for defendants proposed to E. F. Perilloux, one of the defendants, and a witness for the defendants, the following question:

"Mr. Perilloux, was it understood that this extension of ninety days should refer only to the government tax, or to the government tax and the purchase price, both included?"

To this question counsel for plaintiff objected, on the ground that the agreement controls, and that nothing said between the parties (if anything was said) before or at the time of making the contract can be established here; and further objected to any evidence that will in any manner vary or affect the terms of the written agreement between the parties, and to allow either party to construe the agreement in the presence of the jury and as a controlling element for the court. This objection was overruled by the court, and plaintiff excepted. The witness Perilloux answered the question as follows:

"It was to cover both, and, furthermore, it was previous to that time, about a week or ten days previous, previous to the consummation of this contract, Mr. Gerde and I—Mr. Gerde, who is my partner, and I—called on Mr. Brady and Mr. Leon Gerson at the St. Charles Hotel, and it was specially stipulated by Mr. Brady that if I would take this lot of whisky, that not only would they extend the time at any and all times—I suppose there was a certain limit, but as long as we didn't withdraw too much whisky at a time, or, in other words, as long as we didn't owe them for whiskies delivered in too large an amount—that they would extend either on the purchase price or on the tax-paid goods. Furthermore, that at any time—they were so confident that the market would go up, and their quotations prove it, so far as their quotations are concerned—that at any time they would relieve us of the amount of those whiskies, guarantying us against any loss."

Whereupon counsel for plaintiff, in the presence of the jury, moved to strike out the entire answer of the witness, and requested the court to direct the jury to pay no attention to the answer of the witness to the last question, upon the grounds previously urged with reference to the admission of parol testimony to modify or explain a written instrument. The court refused, and plaintiff excepted.

The written agreement of October 27, 1900, is of the class known in the Louisiana Civil Code as an "act under private signature," and is subject to article 2276 of said Code, which is as follows:

"Art. 2276. Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them or since."

See article 2238, and Gomilla v. Insurance Co., 40 La. Ann. 553, 4 South. 490. This is the rule of evidence in that particular in both civil and common law. Greenleaf on Ev. c. 25, par. 275 et seq.; Martin v. Cole, 104 U. S. 30, 26 L. Ed. 647, and Rose's Notes thereon, vol. 10, 1304; Gomilla v. Insurance Co., supra; Tenney v. Abraham, 43 La. Ann. 240, 9 South. 40.

The evidence offered does not tend to explain any ambiguity in the said written agreement, but rather and decidedly to enlarge and expand it. The cases cited in the brief of defendant in error on this question all relate to the admissibility of evidence to explain latent ambiguities in written agreements. In the written agreement here we find no ambiguity, and therefore no evidence could be properly received on that ground. Tenney v. Abraham, supra, is an interesting Louisiana case where a written contract was not allowed to be expanded by evidence of parol agreements, even subsequent to the writtten contract, where not specifically and sufficiently pleaded.

The oral evidence admitted, as complained of in the bill of exceptions, should have been excluded from the jury for the following additional reasons: (1) It was an effort to give to the jury the witness' construction of a written contract, in variance with its written terms, when the duty of construction lay with the court, depending upon the very words of the written contract itself, unless there was a suggestion and finding of existing latent ambiguity in the written terms of the agreement. And no such ambiguity was suggested, or existed in fact. (2) The testimony admitted under objection was an attempt to construe the contract by conversations and negotiations antecedent to and contemporaneous with the execution of the written agreement in question. (3) It was not an attempt to establish a new oral contract subsequent to the execution of the written contract, by which the agreement in the written contract was changed in terms or enlarged in range and meaning, because, if the written contract had been originally written in the exact form into which it was sought to be construed by defendants' witnesses, it would in that form have been of no avail to defendants as defense against the two notes sued on, because defendants in their pleading had alleged no breaches of the conditions of such a contract that could be made the basis for an action for unliquidated damages, or set-off of the same against the notes sued on.

In the first part of this opinion we have shown the defendants' pleadings to be insufficient to defeat the plaintiff's right to recover on the notes sued on. With this view of the pleadings and finding, that the parol evidence covered by the first bill of exceptions and the second assignment of error should have been excluded, it is clear that the first and fifth assignments of error are well taken, for there were neither sufficient pleadings nor sufficient legal evidence to defeat recovery on

the notes sued on. Other assignments of error need not be considered.

The defendants in error assign errors in the rulings of the court below on the exceptions filed to the plaintiff's action, but as those exceptions are based on matters of fact, and as the defendants in error sued out no cross-writ of error, we cannot consider such assignment.

As there may be another trial of this case on amended and sufficient pleadings, it may be proper to say that the record before us seems to show a complete and fully executed sale and delivery of whisky on or about October 27, 1900, and, until that sale shall be rescinded or otherwise annulled, the defendants are obligated to pay or otherwise compensate the price as represented in the notes given therefor. The admitted facts that the defendants have actually possessed themselves of and consumed part of the whisky, and have at times pledged as their own the warehouse receipts accepted by them as a delivery, would seem, in law as well as morals, to estop them from claiming that the contract of October 27, 1900, was a mere executory contract, or even claim a rescission of the same, except gross fraud should be alleged and proved.

The judgment of the Circuit Court is reversed, and the cause is remanded with instructions to grant a new trial.

SHELBY, Circuit Judge, dissents.