[No. 5007.    Decided May 1, 1905.]

GEORGE M. NETHERCUTT, *Appellant,* v. FANNIE HOPKINS *et al., Respondents.*[1]

BILLS AND NOTES—INDORSEMENT IN BLANK—ORAL EVIDENCE TO IMPEACH—FRAUD—MISREPRESENTATIONS BY ATTORNEY. In an action upon promissory notes indorsed in blank, it is admissible, as between the indorsers and indorsee, to impeach the indorsement for fraud by oral evidence to the effect that the indorsee was the attorney for the indorsers, who were illiterate, and that he represented that the maker was insolvent and advised them to sell the notes at a discount, and that their indorsement would create no liability against them, and that he could sell the notes for them, whereupon, relying on the representations, they indorsed the notes under the agreement that they would not be liable, and delivered them to the attorney, who took them for himself at a heavy discount, and three years later brought the suit to collect the face of the notes and an attorney's fee.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered September 5, 1903, upon findings in favor of the defendants, after a trial before the court without a jury, dismissing on the merits, an action on promissory notes. Affirmed.

*William M. Murray* and *George M. Nethercutt,* for appellant.

*John A. Pierce* and *James Hopkins,* for respondents.

MOUNT, C. J.—On January 16, 1900, Letha Stanford executed and delivered ten promissory notes of $25 each, to one H. C. Parker. These notes bore interest at the rate of eight per cent per annum. The first of these notes was due December 1, 1900, and the others matured on the first of each succeeding month. They were indorsed before maturity as follows:

[1]Reported in 80 Pac. 798.

"Without recourse on me, I hereby assign this note to
Fanny Hopkins.   H. C. Parker, by his attorney in fact,
G. N. Nethercutt.

"Notice of non-payment and protest waived.   Fanny
Hopkins, Her mark."

On the 1st day of May, 1903, the appellant, George M.
Nethercutt, brought an action on the notes in the usual
form, alleging that he was the owner and holder thereof.
The maker and Mr. and Mrs. Hopkins, the last indorsers,
were made parties.   The maker was not served, and did
not appear in the action.   The indorsers appeared and de-
fended.   The answer admitted the notes and their indorse-
ment, and then alleged:

"That the plaintiff, had, for a long time prior to said
transaction, been the attorney for these defendants, and
had advised them about all matters relating to their busi-
ness; that, prior to the transfer of said notes to the plain-
tiff, said plaintiff represented to these defendants that he
was acting as an agent for other parties who wished to
purchase said notes; that the property mortgaged to se-
cure said notes was not good security, and that the plain-
tiff would negotiate with the party whom he represented
to pay these defendants the sum of $150; that they would
be released from all liability on said notes, and that their
indorsements placed on said notes would only authorize
the party to whom they were transferred to collect said
notes for the maker, and that these defendants would not
be liable thereafter, and that said indorsements were made
to enable the party to whom they were transferred to col-
lect the said notes from the maker thereof, and the said
plaintiff, well knowing the premises and the facts afore-
said, for the purpose of defrauding the said defendants
and inducing them to part with the possession of the said
notes described in the plaintiff's complaint, and for the
further fraudulent purpose of inducing the said defend-
ants to allow him, the said plaintiff, a greater rate of dis-
count on said notes, by pretending that he could receive

said notes without recourse to defendants, but fraudulently intending to hold the said defendants liable as indorsers upon said notes, if he could, by false and fraudulent representations induce the said defendants to indorse the same in such manner as to enable the plaintiff to assert such apparent liability."

The answer further alleged that the defendants relied wholly upon the representations made to them, and that, by reason of said representations, and in compliance with the request of the plaintiff, they indorsed said notes for the purpose above stated, and for no other. The lower court received evidence to prove the allegations of the answer. The evidence fully supports the facts alleged.

Appellant contends that the lower court erred in receiving this evidence. This is the only error discussed upon this appeal. The general rule seems to be well settled, that,

"In an action against a party upon his indorsement in blank of a negotiable promissory note, evidence of a contemporaneous parol agreement that the indorsement is without recourse is inadmissible." *Martin v. Cole,* 104 U. S. 30, 26 L. Ed. 647.

See, also, *Bryan v. Duff,* 12 Wash. 233, 40 Pac. 936, 50 Am. St. 889; *Allen v. Chambers,* 13 Wash. 327, 43 Pac. 57. But it has been held in this state that parol evidence is admissible, as between the indorser and the indorsee, to show that the indorsement was without consideration, and as security only. *Keeler v. Commercial Printing Co.,* 16 Wash. 526, 48 Pac. 239. It is also the rule that such evidence is admissible to impeach the indorsement upon the ground of fraud. Daniel, Negotiable Inst. (5th ed.), §§ 720-722; *Bryan v. Duff, supra.*

We think the allegations of the answer are sufficient to justify the lower court in admitting the evidence under

the last named rule. The allegations of the answer, and the evidence in the case, show that the appellant is a lawyer by profession; that, for some time prior to the indorsement of the notes, he had been the attorney and confidential adviser of the respondents; that he was their attorney in the transaction in which they received the notes; that appellant was also the attorney for the maker of the notes; that, a short time before the notes were indorsed, appellant represented to the respondents, and advised them, that the maker of the notes was insolvent, and that the mortgage security was insufficient to pay the notes, and that they had better sell the notes at fifty cents on the dollar. He also represented to the respondents that he thought he could sell the notes to a friend of his for the sum of $150, clear to them, without any liabiliy thereon. The respondents were both illiterate—one of them could neither read nor write. They relied upon appellant's advice, and indorsed the notes, as requested by appellant, and about three weeks later received $125 from the appellant. At the time the notes were indorsed, it was clearly understood between the appellant and respondents that their signatures on the back of the note created no liability against them, and at that time respondents asked the appellant to whom he was going to sell the notes, and appellant refused to state the name of the party. After respondents received the money for the sale of the notes, they heard nothing more about them until just before this action was begun, nearly three years later, when appellant for the first time told respondents that he was the owner of the notes and demanded the face thereof with interest, which respondents refused to pay. Appellant denied that he told the respondents that the indorsement was only for

the purpose of passing title to the notes, or that respondents would not be liable as indorsers. He also said:

"In negotiating for the purchase of these notes, I told them I was acting for another party, but did not tell them who, because I did not think it was any of their business. I was, in fact, buying them for H. C. Parker [the payee] for whom I was agent at the time, but when I came to settle up with Parker he repudiated the transaction, and refused to take the notes, and I had to accept them for myself as my own."

No attempt was made to explain the delay in notifying respondents of the facts. Assuming that the appellant acted in good faith, and within a reasonable time, we think, under his own statement, appellant was entitled to no more than his money back with interest. There is no showing in the answer, or in the evidence, that the representations that the maker was insolvent or the security worthless were untrue; but, assuming these statements were true, the facts—that the appellant was the attorney and adviser of the respondents, and advised the respondents to sell the notes for $150, and that such sale and their indorsement on the notes created no liability against them, and that respondents, relying upon this evidence (as they certainly had a right to do) transferred the notes by blank indorsement, and delivered them to their attorney, who thereafter paid the money and took the notes for himself at a large discount, and thereafter attempted to collect the face of the notes with interest and an attorney's fee of $75—appear to be very strong evidence of fraud, sufficient, we think, to justify the court in admitting the evidence, and sufficient to sustain the averment.

The judgment of the lower court is therefore affirmed.

FULLERTON, DUNBAR, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.