First National Bank of Lake Providence, Louisiana, v. Reinman.

Opinion delivered February 7, 1910.

1. Bills and notes—indorsement—parol evidence to explain.—Parol evidence is admissible, as between an indorser and indorsee of a note, to show that the indorsement was made merely for the purpose of transferring title to the indorsee, who was the real owner of the note, and without any intention on the indorser's part to become liable for its payment. (Page 378.)

2. Actions—wrongful transfer to equity.—Where timely objection was made to the transfer of a cause from the circuit to the chancery court, in a case where the action and defense were purely legal, it was error for the latter court to entertain jurisdiction. (Page 381.)

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

*James A. Comer,* for appellant.

It was error to transfer the cause to equity, over the objection of plaintiff. He was entitled to a trial by jury. Kirby's Digest, § 6170; 73 Ark. 462; 52 Ark. 411; 72 Ark. 115.

*Baldy Vinson,* for appellee.

Parol evidence was admissible to show that Reinman indorsed the note to pass the legal title, and that Walker was really the owner of the note and the real payee. 93 Pac. 366; 17 L. R. A. (N. S.) 1105; 1 Daniel on Neg. Instr., § 644a, 741; Randolph on Com. Paper, § 788.

FRAUENTHAL, J. This was a suit instituted originally in the Pulaski Circuit Court by the First National Bank of Lake Providence, La., the plaintiff below, against Louis Reinman, to recover against him as the indorser of a certain note. The note sued on was executed by B. F. Brown at Lake Providence, La., on March 15, 1905, for $600, and was payable to the order of Louis Reinman on or before November 15, 1905; and it is stated in the note that it was given for four mules, which should remain the property of the payee until paid for. Upon the note were the following indorsements: "C. S. Wyley (indorser), Louis Reinman." In its complaint the plaintiff alleged that the note was transferred and indorsed to it before maturity in the usual course of business, and that due demand for payment and notice of nonpayment had been made. The defendant denied that the note had been transferred and indorsed to plaintiff in the usual course of business, and denied that it had been duly protested or that notice of non-payment had been given to him. He alleged in substance and effect that he was the owner of the four mules set out in the note, and that said Brown desired to purchase them, but, not knowing his financial responsibility, he declined to sell to him. He mentioned the proposed purchase of the mules to one R. J. Walker, who was the cashier and business manager of the plaintiff, and it was agreed between him and said cashier of said plaintiff that defendant would sell the mules to the plaintiff or said cashier for $450, and that a note for $600 should be obtained from said Brown and indorsed by said C. S. Wyley, that the note should be made payable to defendant, and that he should then transfer the note to plaintiff; that as a matter of fact he actually sold

the mules to the plaintiff, or to Walker as its cashier, for $450, and, only to accommodate the plaintiff in obtaining the note of Brown for $600 on the actual sale of the mules by said plaintiff or its cashier to Brown, it was agreed between plaintiff and defendant that the note should be taken in the name of defendant as payee, who would then transfer it to plaintiff; and that he did not actually under said agreement sign the note as indorser, but only as agent of plaintiff to transfer to it the title to the note.

In his answer, which he also denominated a cross-complaint, he asked that the cause be transferred to the chancery court, which was done. The plaintiff at the time objected to the transfer of the case to the chancery court, and duly saved its exceptions to the order of transfer that was made. In the chancery court the plaintiff filed a motion asking that the case be transferred back to the circuit court, and this motion was overruled.

The defendant adduced evidence tending to sustain the allegations of his answer relative to the manner in which and the party to whom the mules were sold, the circumstances relative to execution of the note and the manner and object of his endorsement and transfer of the note. Upon a hearing of the case the chancellor rendered a decree dismissing the cause for the want of equity.

The defendant indorsed the note sued on in blank; and the question is whether oral testimony is admissible to explain and qualify this unrestricted indorsement. By an indorsement in blank of a note the law implies a contract made by the indorser which is of the same force as if it was reduced to writing. That contract is that, upon due demand of the maker and nonpayment, he will pay the note if due notice of such nonpayment is given to him. It is well settled that, as a general rule of law, oral evidence is not admissible to contradict or vary the terms of a written contract. And ordinarily the written contract that is entered into by an indorser when he makes an unrestricted indorsement cannot be contradicted or varied by parol evidence. In 1 Daniel on Negotiable Instruments, § 718, the author says: "For, in fact, though there be nothing but the indorser's signature, the indorser's contract is as fully expressed as that of the drawer of a bill payable to bearer. He is a new drawer on

the drawee, if it be a bill; a drawer on the maker, if it be a note; and the instrument itself, with his name signed as indorser, constituted his written contract, from which he can be absolved only by failure of demand or notice of other delinquency of the holder. The following general view may, therefore, be stated, towit: That in an action by immediate indorsee against an indorser no evidence is admissible that would not be admissible in a suit by a party in privity with the drawer against him." *Martin* v. *Cole,* 104 U. S. 30.

But, as between the indorser and his immediate indorsee, this general rule precluding the introduction of parol evidence to explain or qualify the indorsement has its limitations and exceptions. As is said in 1 Daniel on Negotiable Instruments, § 720, "There are three classes of cases in which evidence for this purpose is admissible." Thus, it may be shown by this character of evidence that the indorsement was without consideration, or that it was made upon trust for some special purpose; or it is admissible where by reason of certain representations and the transaction at the time of the indorsement the note was taken by the indorsee in sole reliance on the responsibility of the maker, and it was indorsed in order only to transfer the title in pursuance of such transaction and agreement, and where the attempt to enforce the indorsement would be a fraud. 1 Daniel on Negotiable Instruments, § § 720a, 721, 722; 8 Cyc. 255; *Lovejoy* v. *Citizens' Bank,* 23 Kan. 331.

In 1 Daniel on Negotiable Instruments, § 722, the following case is stated: "In Pennsylvania, where defendant purchased coffee of plaintiff, upon an agreement that the latter should receive certain notes in payment, without defendant assuming any responsibility, the latter handed plaintiff the notes, when he said, 'Hill, you must indorse these notes.' Defendant replied, 'That is not our understanding.' The plaintiff rejoined: 'They are made payable to you. How will you convey them to me? You must indorse them in order that I may collect them.' Defendant then said: 'I indorse them; but, remember, I am not to be held responsible for their payment.' The court said: 'The evidence went to prove a direct fraud in obtaining the indorsements, or their perversion to a use never intended—a fraudulent purpose.' This case is distinguished from those in

which a mere agreement that the indorser shall not be responsible is offered to be shown, no circumstances which would otherwise render the transaction fraudulent or showing a secret trust appearing."

The above Pennsylvania case can only be based upon the principle that the indorsement was obtained by false and fraudulent representations; for, if the indorsement was made only with the contemporaneous oral agreement that it was made without recourse or without assuming responsibility and with no facts or circumstances showing a false or fraudulent representation which induced the indorsement, then such contemporaneous oral agreement would be inadmissible to contradict or vary the written contract of responsibility implied by the unrestricted indorsement.

In the case of *Lovejoy* v. *Citizen's Bank,* 23 Kan. 331, a note was made payable to the president of a bank, and was by him indorsed in blank to the bank. In that case it was held that parol evidence was admissible showing that the note represented a debt of the maker to the bank, and that the indorsement was made merely for the purpose of transferring the title to the bank.

In the case of *Johnson* v. *Schnabaum,* 86 Ark. 82, in speaking relative to the admissibility of testimony explaining and qualifying a blank indorsement under the circumstances of that case, this court used the following language: "No rule of evidence is, we think, violated by admitting such explanation. While the law implies, from an unrestricted indorsement, a contract to guaranty payment of negotiable paper, still the fact may be shown that the purpose of the assignment was merely for collection, and not for the sale of the instrument; and when this is shown, no liability as guarantor of payment is implied."

In the case at bar the testimony on the part of the defendant tended to prove that he sold the mules to the plaintiff or its cashier, and for its convenience or accommodation took the note of the maker payable to him as payee, and then indorsed same to plaintiff under the agreement and understanding made at the time that this was done merely to pass the title to the plaintiff, and not as a sale of the note and a guaranty of its payment. The face of the note was the amount of the purchase money

which Brown then agreed to pay for the mules, and that amount was really payable to the plaintiff, and not to defendant; and the note was in truth and in fact, under that testimony, the property of the plaintiff. The defendant was in effect only the agent of the plaintiff in permitting the note to be made payable to him, and in indorsing it he was merely transferring it for the purpose of placing the title to the note in the name of the plaintiff, who was the real owner. Under these circumstances, instead of selling the note, he sold the mules to the plaintiff or its cashier, and by his indorsement of the note he did not become liable as a guarantor of its payment. Parol evidence was admissible under these circumstances to show the nature of the transaction and the purpose of the indorsement, and such evidence would be a complete defense to an action against the defendant seeking to hold him liable as a guarantor of the note.

The defense, however, could be made, and this evidence was admissible, in a court of law equally as in a court of equity. The defense involved no equitable right or remedy, but only the admissibility of evidence. This court has held that where none of the parties objected to the transfer of a cause triable at law from the law court to the chancery court, and did not object to the chancery court entertaining and trying the action, the chancery court would have jurisdiction to determine the cause. *Collins* v. *Paepcke-Leicht Lumber Co.,* 74 Ark. 81; *Blake* v. *Scott,* 92 Ark. 46. But where such objection was made to the transfer of a case, in which the action and defense were purely legal, from the law court to the chancery court, it would be error to make such transfer, and error for the chancery court to entertain jurisdiction thereof. *Weaver* v. *Arkansas Nat. Bank,* 73 Ark. 462; *Johnson* v. *Gillenwater,* 75 Ark. 115. In the case at bar the plaintiff duly objected to the transfer of the action from the law to the chancery court. The evidence in the case was conflicting, and the plaintiff had the right to have the issue tried by a jury and the action determined by a law court.

The circuit court therefore erred in transferring the cause to the chancery court, and the chancery court erred in entertaining jurisdiction thereof.

For this error the decree is reversed, and this cause is remanded with directions to transfer the case to the Pulaski Circuit Court, and for further proceedings.