ELLIS *v*. FIRST NATIONAL BANK OF FORDYCE.

Opinion delivered March 24, 1924.

1.  BILLS AND NOTES—DURESS IN PROCURING BILL.—It is not duress to threaten to do that which a party has a legal right to do, and the fact that a creditor, by threats to sue, induced his debtor to sell goods at a sacrifice did not constitute duress.

2.  EVIDENCE—PAROL EVIDENCE RULE.—As between the immediate parties to a blank indorsement of a draft, it is competent to show, by parol evidence, either want or failure of consideration, or that the indorsement was procured by fraud, or upon some special trust, or for collection merely.

3.  PLEADING—CONSTRUCTION.—In testing the sufficiency of a pleading by general demurrer, every reasonable intendment should be indulged to support it.

4.  PLEADING—INDEFINITENESS.—Where facts are defectively stated in an answer, the remedy is by motion to make more definite and certain, and not by demurrer.

5.  PLEADING—LEGAL EFFECT OF FACTS.—Although the Code forbids the allegation of mere conclusions of law, facts constituting the cause of action should be stated according to their legal effect, since the fact and not the mere evidence of it must be stated.

6.  BILLS AND NOTES—SUFFICIENCY OF ANSWER.—In an action by the indorsee of a draft against the indorser, the latter's answer alleging that the indorsee was pressing him for payment of a debt, and induced him to sell lumber at a sacrifice under an agreement that the indorsee would take the buyer's acceptances in payment of such debt, and that, when the acceptances were delivered to the indorsee, the latter marked the indorser's account paid, *held* to raise an issue as to whether the indorsement was made merely to transfer title.

Appeal from Dallas Circuit Court; *Turner Butler,* Judge; reversed.

STATEMENT OF FACTS.

First National Bank of Fordyce sued the Morse Brothers Lumber Company and the Ellisville Lumber Company upon three drafts. Each of these drafts was drawn by the Ellisville Lumber Company on the Morse Brothers Lumber Company. Each draft was payable to the order of the Ellisville Lumber Company, and was indorsed by it in blank to the First National Bank of Fordyce.

The first draft was for $750, dated October 20, 1921, payable sixty days after date. The second draft was for $1,068.93, dated December 12, 1921, payable sixty days after date. The third draft was for $1,089.75, dated December 13, 1921, payable thirty days after date.

The drafts were presented to the Morse Brothers Lumber Company at the place of payment, and, upon the failure of said company to pay the same, each one was duly protested and notice thereof duly given to the Ellisville Lumber Company. The drafts were made exhibits to the complaint.

The first draft was in form as follows:

"$750.                                    Oct. 20, 1921.

"Sixty days after date pay to the order of Ellisville Lumber Company seven hundred fifty dollars, value received, and charge the same to account of Morse Bros. Lbr. Co. Little Rock, Ark.

"Ellisville Lumber Co.
"By S. C. Ellis."

The draft was duly accepted by the Morse Brothers Lumber Company. It was indorsed in blank by the Ellisville Lumber Company. Each of the drafts was in the same form, and each was indorsed in blank by the Ellisville Lumber Company.

The Morse Brothers Lumber Company made no defense to the suit.

The Ellisville Lumber Company filed an answer in which it made a general denial of the allegations of the complaint. It also filed a specific answer in two paragraphs as follows:

"The defendants above named state the truth to be that the plaintiffs herein forced them and coerced them to sell to the Morse Brothers Lumber Company 201.688 feet of lumber, an itemized statement of said lumber being hereto attached, marked 'exhibit A' and made a part of this answer, and that said plaintiff forced the defendants above named to sell said lumber at a price per thousand of $5 less than its actual value, thereby damaging the defendants herein named in the sum of $1,008.44.

"The plaintiff, at the time that it coerced these defendants into the selling of this lumber to the Morse Bros. Lumber Company, Little Rock, Arkansas, did so. with a specific understanding that they were to take the acceptance, payable as designated therefor, in full payment of the indebtedness due by these defendants, to the said First National Bank of Fordyce, Arkansas. And when said acceptances were all delivered to the said plaintiff, the plaintiff canceled the papers of these. defendants, marked them paid, and closed the transaction as per the terms of the agreement.

"Since that time, and within the last sixty days, the plaintiff has brought suit against these defendants and the Morse Bros. Lumber Company, and are now seeking to hold these defendants for the indebtedness, which has been fully paid and discharged."

A demurrer was filed by the plaintiff to these two paragraphs, which was sustained by the court. The Ellisville Lumber Company declined to plead further, and the court rendered judgment in favor of the plaintiff for the amount of the drafts and the protest fees. The case is here on appeal.

*Wilson & Martin,* for appellant.

Parol evidence is admissible to explain or qualify an unrestricted indorsement on commercial paper. 86 Ark. 82; 23 Kansas 311; 1 Daniel on Negotiable Instruments, § 722; 93 Ark. 379; 97 Cal. 403.

*Frauenthal & Johnson* and *S. F. Morton,* for appellee.

Parol evidence of a prior or contemporaneous agreement is not admissible to vary, contradict or explain an unrestricted indorsement of a negotiable instrument. 93 Ark. 376; 104 U. S. 30; 26 L. ed. 647; 1 Daniel on Negotiable Instruments (3d ed.), § 719; 4 A. L. R. 760; 104 U. S. 30.

HART, J., (after stating the facts). The defense relied upon in the first paragraph of the answer copied in our statement of facts is that the Ellisville Lumber

Company was coerced into selling the lumber for which the drafts sued on were given.

It is claimed that, by intendment at least, this paragraph shows that, by persistent pressure, the Ellisville Lumber Company was compelled to sell the lumber for which the drafts were given, in order to pay its debt to the bank. This did not in any sense constitute duress in law. It is not duress to threaten to do that which a party has a legal right to do, and the fact that a party threatens to bring suit to collect a claim constitutes neither duress nor fraud, and a compromise of such a claim is binding in law. *Vick* v. *Shinn,* 49 Ark. 70; *Gardner* v. *Ward,* 99 Ark. 588; *Fonville* v. *Wichita State Bank & Trust Co.,* 161 Ark. 93; 9 R. C. L. 721, and 13 C. J. 399.

The facts stated in the first and second paragraphs of the answer are admitted to be true, and it is also claimed that they show, inferentially at least, that the Ellisville Lumber Company indorsed the drafts in blank without consideration. In other words, it is claimed that, under the allegation of these two paragraphs of the answer, the Ellisville Lumber Company had the right to introduce parol evidence to show the real transaction between the parties and that the indorsement was without consideration.

It will be noted that the Ellisville Lumber Company is the drawer of the drafts sued on, and indorsed them in blank to the bank. There is much conflict of authority upon the question of whether or not parol evidence is admissible to contradict or vary the implied terms of a blank indorsement as between the immediate parties. The prevailing view favors the rule excluding parol evidence, since the contract implied by the blank indorsement is as definite as if it was expressed. See case-note to 4 A. L. R., p. 764 *et seq.*

There are, however, certain well recognized exceptions to the general rule. As between the immediate parties, it is always competent for the defendant to show, by parol evidence, either want or failure of consideration

as between himself and the plaintiff, or that the indorsement was procured by fraud, or that it was made upon some special trust, or to make collection.   In these and similar instances, parol evidence is admitted to show the absence of any valid or sufficient consideration for the alleged liability of the defendant to the plaintiff, and its admission violates no principle established for the protection of third persons as *bona fide* holders of negotiable paper.   Daniel on Negotiable Instruments, 6 ed., §§ 720-723 inclusive, and cases cited, and 2 Randolph on Commercial Paper, 2 ed. , §§ 782-784 inclusive.

In recognition of the exceptions to the general rule, this court has held that parol evidence is admissible to show that the negotiable paper was assigned for collection merely as oral testimony to prove that the indorser had not parted with his beneficial interest therein, does not vary the effect of the indorsement.   *Dickinson* v. *Burr,* 15 Ark. 372; *Smith* v. *Childress,* 27 Ark. 328; and *Johnson* v. *Schnabaum,* 86 Ark. 82.

Again, one of the exceptions to the general rule was recognized in *First National Bank* v. *Reinman,* 93 Ark. 376.   In that case it was held that an indorser may show that he indorsed, under an understanding made at the time this was done, merely to pass title to the indorsee, and not as a sale of the note and a guaranty of its payment, when the indorser was not interested in the note.

Reinman was the owner of the four mules set out in the note sued on, and Brown wished to buy them on credit. Reinman declined to sell to him on a credit, and made an arrangement with the First National Bank whereby he would sell the mules to it for $450 and take a note from Brown for $600.   It was agreed that the note should be payable to Reinman, and that he should then transfer it to the bank.

The court held that, under these circumstances, the substance of the transaction was a sale of the mules by Reinman to the bank, and that Reinman's indorsement was merely for the purpose of transferring the title to

the bank. Parol evidence to this effect was held admissible to show the nature of the transaction and the purpose of the indorsement. In other words, the evidence tended to show that there was no consideration for the indorsement, but that the indorsement was merely in aid of the principal transaction, which was to place the title to the note given for the purchase price of the mules in the name of the real owner.

It is claimed, however, that the real basis of the holding in that case was that there was an element of fraud in procuring the indorsement. The only element of fraud that could arise under the facts was the perversion by the bank of the purpose of the indorsement. The note was by Reinman indorsed in blank to the bank, and the law implied a contract on the part of Reinman to guarantee payment of the note. Under these circumstances, the indorser is allowed to show the real facts by parol evidence, not to vary the legal import of the indorsement, but to show that he indorsed it without any consideration whatever. The rule that parol evidence is not admissible to contradict or vary the legal import of a written contract is founded in the highest principles of public policy, and it is absolutely essential to the negotiability of commercial paper that the general rule should be applied to it. As between the parties to negotiable paper and others having notice, the want of consideration for a blank indorsement may be shown, not because there is an element of fraud in the matter, but because, as stated by Mr. Randolph, the exclusion of such evidence would make the courts themselves an engine of fraud.

The substance of the facts alleged in the answer is very similar to those proved in the Reinman case. In the case at bar the bank was pressing the lumber company for payment of the amount due it, and induced it to sell lumber at a price per thousand of $5 less than its actual value. The bank agreed to take the acceptances of the Morse Brothers Lumber Company in payment in full of the indebtedness due by the Ellisville Lumber

Company to the amount of these acceptances. When the acceptances were delivered to the bank it marked the account of the defendant paid in this amount, according to the agreement. This tended to show a want of consideration for making the indorsement. It would have been a vain and idle thing for the Ellisville Lumber Company to have made an agreement to settle a part of its indebtedness by selling its lumber at a sacrifice, and at the same time, by indorsing in blank the paper for the price of the lumber, have thereby guaranteed the payment thereof to the bank.

In testing the sufficiency of a pleading by general demurrer, every reasonable intendment should be indulged to support it. *Cox* v. *Smith,* 93 Ark. 371; *Bruce* v. *Benedict,* 31 Ark. 301; *Turner* v. *Tapscott,* 30 Ark. 312; *Person* v. *Wright,* 35 Ark. 169; and *Ferrell* v. *Elkins,* 159 Ark. 31.

Where facts are defectively stated in an answer, the remedy is by motion to make more definite and certain, and not by demurrer. *Bowers* v. *Hutchinson,* 67 Ark. 15; *Gates* v. *Solomon,* 73 Ark. 8; and *Jennings* v. *Bouldin,* 98 Ark. 105. The Code system of pleading was adopted in order to secure to the parties to a suit in every case a full and fair hearing upon the merits. While the Code forbids the allegation of mere conclusions of law, its spirit and object require that the facts constituting the cause of action shall be stated according to their legal effect. In short, the rule requires that the fact, and not the mere evidence of it, must be stated.

It is true that the defendant does not, by direct and express terms, aver that the indorsement in blank made by it on the drafts was pursuant to an express agreement that it should be done for the purpose of transferring the title to the bank, yet, when all the facts alleged in the answer are considered together, the substance is that such was the intention of the parties. That this was the tenor and effect of the agreement between the parties is fairly inferable from the facts alleged by the defendant in its answer. If the court had overruled the demurrer and

put the parties to the proof, the plaintiff could not have been misled by the averments of the answer. It would have understood perfectly well that the defendant was claiming that the indorsement was made to carry out the principal agreement between the parties, which, in short, was that, if the Ellisville Lumber Company would sell its lumber to the Morse Brothers Lumber Company at a sacrifice, the bank would take the acceptances of the Morse Brothers Lumber Company in satisfaction of the debt owed it by Ellisville Lumber Company, to the amount of such acceptances.

As we have already seen, the presumption of liability arising from a blank indorsement is *prima facie* merely, and not conclusive. Hence, as against all except *bona fide* holders for value, the true terms of the contract may be shown by evidence resting in parol. That is to say, as between the original parties and others having notice, oral evidence is admissible with respect to contracts of indorsement as well as other contracts to show the true consideration or want or failure to consideration.

In the case before us, in order to bind the plaintiff by the alleged agreement it will be necessary for the defendant to prove that the plaintiff agreed to take the acceptances as a payment in full of the indebtedness to it of the defendant to the amount of the acceptances, regardless of the fact of whether or not the Morse Bros. Lumber Company paid the acceptances; and that the defendant indorsed the acceptances in blank for the purpose of transferring the title of the acceptances to the plaintiff and thereby carry out its original agreement with the plaintiff.

As above stated, if the Ellisville Lumber Company intended to guarantee the payment of the acceptances, no useful purpose could have been served by making the original agreement. The object of the present suit was to hold the Ellisville Lumber Company liable as indorser on the three drafts; and we think that, by fair intendment, the answer raises the issue that there was

no consideration for the indorsements, and that it was made to carry out the original agreement between the parties. If the plaintiff thought there was any ambiguity in the pleading and that it might be taken by surprise by the proof, it should have filed a motion to require the defendant to make the answer more definite and certain.

It follows that the court erred in sustaining the demurrer to the answer, for the reason above given. As bearing upon the principles of law decided, we cite the following cases: *National Bank of Rising Sun* v. *Brush,* 6 Fed. 132; *Brown* v. *Summers,* 91 Ind. 151; *Kirkham* v. *Boston,* 67 Ill. 599; and *Hamburger* v. *Miller,* 48 Md. 317.

Therefore the judgment will be reversed, and the cause remanded for a new trial.

McCULLOCH, C. J., (dissenting). This action was brought to recover on the indorsements on the drafts, and not on the original debt which was discharged by the delivery of the drafts. If the action had been to recover on the original debt, then it would, of course, be competent for defendant to prove that the debt had been discharged by an absolute acceptance of the draft in payment of the debt. No rule of evidence would be violated in permitting oral testimony to be introduced to establish that fact. But, as before stated, the action being on the indorsement, the case is fully made out by presenting the unrestricted indorsement made on the draft, notwithstanding the fact that the draft may have been accepted in full payment of the original debt, unless it be proved that the indorsement was not intended to be unrestricted, but was made only for the purpose of passing title to the paper. I believe that, under the authority of our decision in *First National Bank* v. *Reinman,* 93 Ark. 376, a blank indorsement on negotiable paper may be proved by parol to have been for the sole purpose of passing title to the instrument, but there is no plea in this case upon which such proof could be let in. It is nowhere alleged in the answer that the blank indorsements were made with any intention otherwise than that which the law attributes. All that the answer contains

is an allegation that the plaintiff accepted the draft "in full payment of the indebtedness due by these defendants," and that "when said acceptances were all delivered to the said plaintiff, the plaintiff canceled the papers of these defendants, marked them paid, and closed the transaction as per the terms of the agreement." If there is any allegation in the answer to the effect, either expressly or by fair implication, that the indorsements were made merely for the purpose of passing title, I am unable to comprehend it. It is manifest from the language of the answer that the pleader erroneously concedes the law to be that the defendant might defend against an unrestricted indorsement merely on the ground that the paper was accepted in satisfaction of the original debt. This conception is clearly manifested in the last sentence of the answer as copied in the opinion of the majority, where it is said that the plaintiffs "are now seeking to hold these defendants for the indebtedness, which has been fully paid and discharged."

The defendant selected his own ground upon which he sought to make a defense, and elected to stand upon the demurrer. I think that the answer was insufficient, and that the demurrer was properly sustained.