McDONALD v. THOMPSON.

Opinion deivered February 9, 1925.

1. EVIDENCE—BLANK INDORSEMENT OF NOTE—PAROL EVIDENCE.— Parol evidence is inadmissible to show that a blank indorsement of a note was intended to be qualified or restricted.

2. EVIDENCE—PAROL EVIDENCE AS TO BLANK INDORSEMENT.—Evidence that a note traded by the payee for a team of mules and indorsed by him in blank was in fact indorsed with the under-

standing that he assumed no personal liability *held* inadmissible in an action on the note.

3. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.— While parol evidence is admissible in an action to reform an instrument, such evidence must be clear and convincing.

Appeal from Greene Chancery Court, *J. M. Futrell,* Chancellor; affirmed.

### STATEMENT OF FACTS.

Orville Thompson sued at law H. T. Cazort, G. W. Richburg and Bill McDonald, Jr., to recover the sum of $382.17 and the accrued interest, alleged to be due him upon a promissory note.

Bill McDonald, Jr., filed a separate answer, in which he set up the defense that he had indorsed the note without any consideration, and also set up facts entitling him to a reformation of the note to show that it was indorsed without recourse.

The cause was transferred to equity, without objection, and heard there.

The original note was introduced in evidence. It was dated Paragould, Arkansas, January 29, 1921, and was payable nine months after date to the order of Bill McDonald, Jr. The note was for $382.17, bearing interest at the rate of ten per cent. per annum from date until paid. It was signed by H. T. Cazort and G. W. Richburg as makers, and was indorsed in blank by Bill McDonald, Jr.

According to the testimony of Bill McDonald, Jr., he traded the note in question to Orville Thompson for a pair of mules, worth $300 or $325, and Thompson paid him the difference in cash. The note was delivered to Thompson by McDonald without being indorsed. A few days afterwards Thompson went to McDonald with the note and asked him to indorse it to enable him to get some money on it. Thompson told McDonald that he would see that he was never bothered about it and that he would not have to pay it. Upon this promise being made to him, McDonald indorsed the note in blank.

According to the testimony of Orville Thompson, when the note was delivered to him by Bill McDonald, Jr., in exchange for the mules, he took the note down town to Bertig Bros., and, before he handed it to them, he saw that there was no indorsement on it. He immediately carried the note back to McDonald and told him that he had neglected to indorse the note. McDonald took the note, signed his name on the back of it, and handed it back to Thompson. Thompson denied that anything was said to the effect that he would never hold him liable as an indorser on the note.

B. M. Kitchens, an employee for Bertig Bros., testified that Thompson told him that he did not want to bother McDonald about the note, and that he had told him at the time he indorsed it that he would see that he was held harmless on it.

According to the testimony of Jeff Bratton, Bill McDonald, Jr., and Orville Thompson came to his office together, and told him that they wanted suit brought on the note. The note was handed to Bratton, and he noticed that McDonald was an indorser on the note. According to his recollection, Thompson said in substance, to McDonald, that he did not want him to pay it if the money could be made out of the makers of the note; but, if it could not, then McDonald would have to pay it. He did not remember that McDonald made any reply to this statement.

On this point McDonald admitted that he and Thompson went to Bratton's office together, and that Thompson asked him to bring suit on the note. McDonald also admitted that Thompson said something at the time to the effect that he wanted Richburg and Cazort to pay the note and that he did not want McDonald to pay it, although the latter was good to him for it. McDonald also said that his recollection is that he told Thompson that he was not responsible, and that he would have to get his money from the others.

The chancellor found the issues in favor of the plaintiff, and entered a decree in his favor, adjudging

that he recover from the defendants, or either of them, the amount of the note and the accrued interest.

The defendant, Bill McDonald, Jr., has duly prosecuted an appeal to this court.

*Huddleston & Little,* for appellant.

The court erred in holding that appellant was restricted in his defense to the equitable remedy of reformation, as his answer raised every issue presented on this appeal. 93 Ark. 376; 15 Ark. 555. Transfer of the cause to equity cannot be questioned now, since no objection was offered at the time. 93 Ark. 376. The court erred in excluding parol testimony as the evidence comes within recognized exceptions to the rule, and was admissible. 93 Ark. 376; 86 Ark. 82; 1 Daniel on Neg. Inst. §§ 720a and 722; 8 Cyc. 255; 21 N. E. 354; 77 N. W. 279; 38 Conn. 15; 9 Am. Rep. 353; 40 N. W. 57; 13 Atl. 420; 4 A. L. R. 764-804; 163 Ark. 471. The note was delivered to and accepted by appellee without indorsement, and title vested in him, but its negotiability was impaired by the lack of appellant's indorsement. 99 Ark. 458. Appellant thereafter indorsed the note solely for the accommodation of appellee, and an action could not be maintained by appellant upon the indorsement. The contract of indorsement is not supported by any consideration, and is *nudum pactum,* 127 Ark. 410. The indorsement was procured by appellee under such circumstances that its enforcement would be a fraud. 5 Serg. & R. (Pa.) 363; 9 Am. Dec. 376; 38 Conn. 15, 9 Am. Rep. 353.

*Jeff Bratton,* for appellee.

One who places his signature on the back of a note is deemed to be an indorser. Section 7829 C. & M. Dig. By § 7801 he may restrict his indorsement by a proper writing. This he did not do. Appellee could have compelled the appellant to indorse the note. 3 R. C. L. p. 984. An indorser without qualification undertakes that the note shall be paid. 3 R. C. L. p. 1153. This case does not come within the exception to the rule that oral testi-

mony is not competent to qualify an unrestricted indorsement in the cases cited by appellant in 93 Ark. 378; 163 Ark. 471 etc.

HART, J., (after stating the facts). It appears from the record that the note sued on was payable to the order of Bill McDonald, Jr., and it was by him indorsed in blank and delivered to Orville Thompson in exchange for a pair of mules and some money, being the difference between the value of the pair of mules and the face value of the note.

According to the testimony of McDonald, the note was not indorsed by him at the time it was delivered to Thompson, but he indorsed it a few days after the delivery, at the request of Thompson, to enable him to use it in borrowing some money.

The chancellor was of the opinion that oral testimony was not admissible to change a blank indorsement into a qualified or restricted indorsement. The chancellor was correct in so holding. The decided weight of authority is to the effect that a contract by blank indorsement is fixed by law, and should not be rendered uncertain by parol evidence any more than when written out in full. Case note to 4 A. L. R., at p. 765.

In *Martin* v. *Cole,* 104 U. S. 30, the general rule is clearly and fully stated by Mr. Justice MATTHEWS, as follows:

"The contract created by the indorsement and delivery of a negotiable note, even between the immediate parties to it, is a commercial contract, and is not in any proper sense a contract implied by the law, much less an inchoate or imperfect contract. It is an express contract, and is in writing, some of the terms of which, according to the custom of merchants and for the convenience of commerce, are usually omitted, but not the less on that account perfectly understood. All its terms are certain, fixed, and definite, and, when necessary, supplied by that common knowledge, based on universal custom, which has made it both safe and convenient to rest the rights and obligations of parties to such instru-

ments upon an abbreviation. So that the mere name of the indorser, signed upon the back of a negotiable instrument, conveys and expresses his meaning and intention as fully and completely as if he had written out the customary obligations of his contract in full.''

This court has recognized the general rule and certain exceptions to it.

In *Johnston* v. *Schnabaum,* 86 Ark. 82, it was held that parol evidence was admissible to qualify an unrestricted indorsement on commercial paper by showing that the note was indorsed merely for collection and not for a sale of it.

Again, in *First National Bank of Lake Providence, Louisiana,* v. *Reinman,* 93 Ark. 376, it was held that parol evidence was admissible between the immediate parties to show that the indorsement was merely made for the purpose of transferring the title to the indorsee, who was the real owner of the note. In that case the testimony showed that Reinman sold the mules to the bank for a certain price, and then, as agent of the bank, sold the mules to a purchaser for an increased price, and, for convenience, took a note payable to himself, and indorsed it merely to transfer the title to it. This same exception was again recognized in *Ellis* v. *First Nat. Bank of Fordyce,* 163 Ark. 471. In that case Ellis owed the bank, and was unable to pay it. The bank insisted on him selling some lumber at a price lower than the usual market price for the purpose of paying its indebtedness, and, at the time, the bank agreed to take the acceptances of the purchaser of the lumber at the stipulated price as payment *pro tanto* of its indebtedness. We held that parol evidence was admissible to show that Ellis indorsed the acceptance to the bank merely to transfer the title to it. In each of these cases an agreement was made that the bank should take the commercial paper in payment of a debt of its customer, and the indorsement was made merely to transfer the title and thereby carry out the agreement between the parties. In each case the bank agreed to accept the commercial paper as payment of

its indebtedness, and the indorsement was merely to transfer the title.

In the case before us, according to the testimony of McDonald himself, he indorsed the note several days after he had given it to Thompson in exchange for a pair of mules. There was no condition attached to the delivery of the note at all. According to his own testimony, this condition was attached to it several days after its delivery. If parol evidence should be allowed to establish such a defense, then every promissory note as between the immediate parties thereto, and, indeed, every contract in writing, would be open to parol proof that it did not correctly represent the agreement made, and oral evidence would be allowed to contradict, alter, or vary it. This would be contrary to the great weight of decisions of the courts of last resort, including the Supreme Court of the United States.

On the question of reformation but little need be said. While parol evidence is admissible in an action to reform an instrument on the ground of fraud or mistake, the evidence must be clear and convincing to warrant a reformation of the instrument. *Nakdimen* v. *Atkinson Imp. Co.,* 149 Ark. 448, and cases cited.

Tested by this rule, the chancellor was right in holding that McDonald was not entitled to a reformation of the note. It is true that McDonald at one time testified that it was understood that he was not to become liable on his indorsement, and another witness testified that Thompson said to him that he had told McDonald, at the time he indorsed the note, that he would see that he was held harmless on it. Thompson, however, denied this in positive terms, and his testimony is corroborated by that of Jeff Bratton.

According to the latter's testimony, McDonald and Thompson came to his office together with the note, and Thompson requested him to bring suit on it. He noticed that McDonald was an indorser on the note, and thinks that Thompson told him, in substance, that he did not want him to pay it if he could make it out of the others;

but, if he could not, then McDonald would have to pay it. McDonald, in detailing what happened on the same occasion, admitted the truth of Bratton's testimony. He admitted that Thompson had told him in effect that he wanted Richburg and Cazort to pay the note, and that he did not want McDonald to pay it, although he was good to him for it.

Under these circumstances the chancellor did not err in holding that McDonald had not shown that he was entitled to a reformation of the contract to show a qualified indorsement of the note, for the reason that he had not made out his case by that clear and convincing testimony which is required in such cases.

It follows that the decree will be affirmed.