McGEHEE *v.* MID SOUTH GAS CO.

5-2644                                                        357 S. W. 2d 282

Opinion delivered May 14, 1962.

[Rehearing denied June 4, 1962]

*Arnold & Hamilton* by *William S. Arnold,* for appellant.

*Mehaffy, Smith & Williams,* by *William J. Smith* and *Frank Warden, Jr.,* for appellee.

Ed. F. McFaddin, Associate Justice. This suit is an effort by appellant, a minority stockholder, to prevent Mid South Gas Company from transferring its assets to Arkansas Louisiana Gas Company. Appellees —defendants below—are the Mid South Gas Company and its officers and directors. On motion of appellees, the Chancery Court dismissed the appellant's complaint without affording him a trial on the merits; and this appeal resulted. The background facts need to be given in some detail for a full understanding of the matter.

Mid South Gas Company (hereinafter called "Mid South") and Arkansas Louisiana Gas Company (hereinafter called "Arkla") were public utility corporations engaged in transmitting and selling natural gas in this State. On May 19, 1961, Mid South and Arkla entered into an "Agreement and Plan of Reorganization", by the terms of which Arkla would issue 336,000 shares of its common stock to Mid South and would assume the debts and obligations of Mid South, all in exchange for the properties and assets of Mid South as a going concern; and with the further provision that Mid South would thereafter dissolve and distribute said stock *pro rata* to the holders of its common stock on the basis of one share of Arkla stock for two shares of Mid South stock. Since both Mid South and Arkla were public utility corporations, the entire Agreement and Plan of Reorganization was subject to the approval of the Arkansas Public Service Commission; and on June 8, 1961, Mid South and Arkla filed their joint application for approval of such plan and the Public Service Commission set the matter for a hearing date of June 26, 1961.

Appellant, Wiley A. McGehee, was a stockholder in Mid South; and on June 21, 1961, he filed the present case in the Pulaski Chancery Court against Mid South and its officers and directors. The complaint alleged that it was a class suit on behalf of the plaintiff and others similarly situated; that the plaintiff was a minority stockholder in Mid South; that on May 19, 1961, without notice to the stockholders, the officers and directors of Mid South entered into the aforementioned

agreement with Arkla; that no valid notice of a stock-holders' meeting was given; that the stockholders' meeting of Mid South held on June 8, 1961 for the purpose of voting on the said Agreement and Plan of Reorganization with Arkla was illegal and void; that the proposed plan of stock distribution was illegal and inequitable; that Ark. Stats. §§ 64-701 *et seq.* (under which appellant says the merger agreement was proposed) are unconstitutional and void; that the entire agreement and plan of reorganization with Arkla is void; and that Ark. Stats. §§ 64-110 *et seq.* are violative of Art. 7, §§ 1 and 15 of the Arkansas Constitution. The prayer of the petition was that Mid South and its officers and directors be enjoined and restrained from further proceeding in the agreement with Arkla. There was thus pending: (a) the suit in the Chancery Court, which involves the present appeal; and (b) the petition of Mid South and Arkla before the Public Service Commission, which latter proceeding came to us in Case No. 2699 in this Court, subsequently to be mentioned.

On the same day that the appellant filed his suit in the Chancery Court (*i.e.*, June 21, 1961), he likewise filed before the Public Service Commission his motion for continuance, informing the Public Service Commission of the Chancery suit and praying that the Public Service Commission delay any action in regard to the contemplated Agreement and Plan of Reorganization between Mid South and Arkla until the Chancery case could be heard and decided. The appellant also filed before the Commission his response and objections to any proceedings, and presented the same questions that he had posed in the Chancery case. The Arkansas Public Service Commission proceeded to a hearing in the matter on July 5, 1961, overruled the motion for continuance, denied the objections and response of appellant, and approved in every respect the Agreement and Plan of Reorganization.[1] The final result of the Public Service Commission proceeding will subsequently be stated.

---

[1] We copy the order of the Public Service Commission in the said case since it appears as an exhibit in the transcript in the case now before us.

## "ORDER

"On June 8, 1961, a joint application was filed by Arkansas Louisiana Gas Company "Ark La" and the MidSouth Gas Company "MidSouth" seeking approval of their Agreement and Plan of Reorganization entered into on May 19, 1961. Pursuant to an order issued by this Commission the matter was set for hearing on June 26, 1961.

"On June 21, 1961, Wiley A. McGehee of McGehee, a stockholder of MidSouth, filed a Motion for Continuance of the hearing pending final adjudication of a suit filed by him in the Chancery Court of Pulaski County, Arkansas, seeking an injunction against the consummation of said Agreement and Plan of Reorganization and also a Response and Objection to the application. One June 26, 1961, the date of the hearing previously set by this Commission, the Motion for Continuance was presented and argued by counsel. The Commission inquired whether the issues propounded to the Chancery Court were raised in the Response and Objection to the Application. Counsel for the minority stockholder affirmed that this situation obtained and the Commission made the following conclusions of law:

"1. That this Commission has primary jurisdiction over the acquisition by Ark La, a gas utility operating in the State of Arkansas, of the utility property and proposed service areas within the State of Arkansas of Mid South, as contemplated by said Agreement and Plan of Reorganization, and also has primary jurisdiction with regard to the sale of public utility assets within the State of Arkansas insofar as the public interest is concerned, as contemplated by said Agreement and Plan.

"2. That this Commission also has jurisdiction over utility reorganization within the State of Arkansas and specifically the reorganization of Ark La and Mid South, with respect to the rights of the holders of their stock, bonds, and other securities, secured and unsecured, as contemplated by said Agreement and Plan of Reorganization.

"3. That this Commission is the proper forum for hearing this application, together with the matters presented in opposition thereto.

"4. That the general corporation statutes of the State of Arkansas applicable to the Agreement and Plan of Reorganization submitted for approval are constitutional.

"5. That all rights of stockholders of both parties are adequately protected by right of appeal to the courts from any order issued by this Commission.

"6. That no legal reason was presented for the continuance sought herein.

"Based upon the above conclusions of law, the Commission denied the Motion for Continuance and proceeded with the hearing on the merits on June 26, 1961, in the hearing room of the Commission, Justice Building, Little Rock, Arkansas, as set by previous order.

"From oral testimony and documentary evidence submitted at the hearing and from briefs filed by opposing counsel, the Commission makes the following findings:

"1. That this Commission has jurisdiction of the matters presented in the application and the response and objection to the application.

"2. That Arkansas Louisiana Gas Company and Mid South Gas Company have entered into a certain Agreement and Plan of Reorganization dated May 19, 1961, a copy of which was attached to the application herein and submitted in evidence in the hearing of the application, and which has now been duly approved by Ark La and Mid South in the manner required by the statutes of the State of Delaware and the State of Arkansas, under the laws of which Ark La and Mid South are incorporated respectively. By the terms of such Agreement and Plan of Reorganization, Ark La will issue 336,000 shares of its Common Stock to Mid South and will assume the debts and obligations of Mid

On July 7, 1961, the appellees herein, being Mid South and its officers and directors, filed in the Chancery Court their motion to dismiss the complaint of McGehee, alleging: that McGehee had entered his appearance before the Public Service Commission in the Arkla-Mid South matter; that he had filed a response; that he had participated in the hearing; that the same questions raised in the Chancery case were likewise presented in the hearing before the Public Service Commission; that the Public Service Commission had ruled adversely to McGehee; that he could appeal that ruling; and that his remedy at law by appeal was adequate and complete.

South, all in exchange for the properties and assets of Mid South as a going concern; and that Mid South will thereafter dissolve and distribute said stock pro rata to the holders of the present Common Stock of Mid South with one (1) share of stock in Ark La being distributed for each two (2) shares of stock in Mid South. The details of the conditions and the mode of carrying into effect the provisions of the agreement are as set forth specifically in said Agreement.

"3. That the holders of the secured indebtedness and other creditors of Arkansas Louisiana Gas Company and the Mid South Gas Company will not be adversely affected.

"4. That the value of said Ark La stock, plus the debts and liabilities of Mid South to be assumed by Ark La, is equal to the fair value of the property of Mid South to be exchanged for said stock.

"5. From testimony offered at the hearing, the Commission finds that the rates and service to the customers now being served by both companies will not be adversely affected by the said Agreement and Plan of Reorganization, which is in the public interest and should have the consent and approval of the Commission.

"6. That Ark La's ability to make gas available for industrial development in the areas served by Mid South exceeds the ability of Mid South in this connection.

"IT IS, THEREFORE, ORDERED THAT:

"The application of Arkansas Louisiana Gas Company and Mid South Gas Company in the above entitled and numbered proceeding be, and the same is hereby, granted; and accordingly the Commission hereby grants its approval and consent to the consummation of the Agreement and Plan of Reorganization between Arkansas Louisiana Gas Company and Mid South Gas Company in the manner contemplated by the said Agreement and Plan of Reorganization between those two corporations dated May 19, 1961, and approved by proper corporate action of each company, and authorized Ark La and Mid South to consummate and carry out said Agreement and Plan of Reorganization, and in that connection, upon the consummation thereof for Mid South to dissolve and distribute 336,000 shares of Ark La Common Stock pro rata to the holders of the present Common Stock of Mid South, and as well to do any and all things necessary and proper to consummate said-Agreement and Plan of Reorganization.

"This order shall be in full force and effect immediately upon its issuance.

"BY ORDER OF THE COMMISSION
"This 5th day of July, 1961."

The motion was supported by copies of the pleadings filed by McGehee before the Public Service Commission, the order of the Commission, and excerpts from the record of testimony before the Public Service Commission. To the motion to dismiss Appellant McGehee filed a response, claiming that the Public Service Commission was without jurisdiction to hear the matter; that his rights of appeal from the Public Service Commission were not adequate and complete; and that the Public Service Commission was merely an administrative tribunal and had no authority to adjudicate the questions raised in the Chancery case. On September 25, 1961, the Chancery Court sustained the motion to dismiss and McGehee duly prosecutes the appeal to this Court.

So much for the background facts. In sustaining the motion to dismiss the petition, the Chancery Court found "that the plaintiff has an adequate remedy at law by way of appeal from the Order of the Public Service Commission as provided by law . . ." We recognize that equity has jurisdiction in a case of this kind if there is no adequate remedy at law; and that the mere existence of a remedy at law does not deprive equity of jurisdiction unless such remedy is "clear, adequate and complete." *Ex Parte Conway,* 4 Ark. 302; *Chapman & Dewey* v. *Osceola District,* 127 Ark. 318, 191 S. W. 220; *Bassett* v. *Mutual Benefit Assn.,* 178 Ark. 906, 12 S. W. 2d 893; *Little Red River Dist.* v. *Thomas,* 154 Ark. 328, 242 S. W. 552; *Meriwether* v. *State,* 181 Ark. 216, 26 S. W. 2d 57; and *Consumers Co-op.* v. *Hill,* 233 Ark. 59, 342 S. W. 2d 657. See also 19 Am. Jur. 118, "Equity" § 114; and 30 C. J. S. 347, "Equity §§ 25 *et seq.* Therefore, in order to sustain the ruling of the Chancery Court, we must determine (a) that the Public Service Commission had jurisdiction; and (b) that McGehee's remedy, before the Public Service Commission and by appeal from its order, afforded him full, adequate, complete, and expeditious relief.

That the Public Service Commission had jurisdiction to inquire into the contract between Mid South and Arkla must be conceded, since each is a public utility and

since § 73-253 Ark. Stats. provides that only with the consent and approval of the Public Service Commission may two or more utilities consolidate or one utility acquire the stock of another utility. The same section prescribes the procedure under which public utilities may obtain such consent and approval of the Public Service Commission; so this statute establishes that the Public Service Commission had jurisdiction. The next and more serious question is whether the jurisdiction of the Public Service Commission afforded McGehee a full, adequate, complete, and expeditious remedy: *i.e.,* could every objection that he listed in the Chancery case be likewise presented and decided before the Public Service Commission or by appeal from its order to the Circuit Court and to this Court. In 30 C. J. S. 345, "Equity" § 23, cases are cited from many jurisdictions to sustain this statement:

"When jurisdiction has become concurrent through statutory enlargement of the legal remedy, a court of equity, although recognizing the existence of its jurisdiction, will generally decline to exercise it where the remedy at law is complete and adequate, and no special circumstances exist demanding the interference of equity."

As heretofore stated, McGehee alleged: that there was no valid meeting of the stockholders of Mid South; that the proposed plan between Mid South and Arkla was illegal and inequitable; that § 64-701 *et seq.* Ark. Stats. were unconstitutional and void; that the entire agreement between Mid South and Arkla was void; and that §§ 64-110 *et seq.* Ark. Stats. were violative of Art. 7, §§ 1 and 15 of the Arkansas Constitution. Did McGehee have a full, adequate, complete, and expeditious remedy to present each of these attacks before the Public Service Commission and, on appeal, to the Circuit Court and to this Court? We unhesitatingly answer this question in the affirmative. We have a series of cases which show the extent of issues that may be presented in a hearing before the Public Service Commission and on appeal therefrom. Some of these cases are: *Southwest-*

*ern Gas & Elec. Co.* v. *City of Hatfield,* 219 Ark. 515, 243 S. W. 2d 378; *City of Ft. Smith* v. *Southwestern Bell Telephone Co.,* 220 Ark. 70, 247 S. W. 2d 474; *Arkansas Power & Light Co.* v. *Arkansas Public Service Commission,* 226 Ark. 225, 289 S. W. 2d 668; and *Town of Emerson* v. *Arkansas Public Service Commission,* 227 Ark. 20, 295 S. W. 2d 778.

In *Southwestern Gas* v. *Hatfield, supra,* one of the questions presented was whether the Town Council of Hatfield had validly approved the sale of the electric distribution system from Southwestern to Rich Mountain Co-op.; and we held that the Commission had full power to determine whether the Town Council of Hatfield had validly approved the sale, saying:

"The Commission's determination of the question is subject to review by the courts. Orderly procedure and administrative efficiency demand that the regulatory body be vested with authority to make preliminary determination of legal questions which are incidental and necessary to the final legislative act. Otherwise endless confusion would result because different phases of the same case might be pending before the Commission and the courts at one time. *St. Clair Borough* v. *Tamaqua & Pottsville Elec. Ry. Co.,* 259 Pa. 462, 103 A. 287, 5 A. L. R. 20; *State ex rel Cirese, et al.* v. *Ridge, Presiding Judge,* 345 Mo. 1096, 138 S. W. 2d 1012. It is our conclusion that the Commission had jurisdiction to determine whether the town council of Hatfield approved the sale in question and that the trial court erred in holding otherwise."

In *City of Fort Smith* v. *Southwestern Bell Telephone Co., supra,* there was involved the question of telephone rates fixed by the Public Service Commission, and we said:

"As regards the review sought by Southwestern, we do examine, and have so examined, to see that the order of the Commission does not amount to a confiscation of the property of the Utility, and that no rights under the United States or State Constitutions have been invaded."

In *Arkansas Power & Light Co.* v. *Arkansas Public Service Commission, supra,* the correctness of rates fixed by the Public Service Commission was involved and we said:

"When an appeal is taken to the circuit court, that court, as well as this court on appeal from the circuit court, shall not extend the review of the Commission's findings and actions 'further than to determine whether the Department (Commission) has regularly pursued its authority, *including a determination of whether the order, or decision under review violated any right of the complainant under the Constitution of the United States or of the State of Arkansas.*' (Sec. 73-233 (d) Ark. Stats.)" (Italics our own.)

In *Town of Emerson* v. *Arkansas Public Service Commission, supra,* there was a contest before the Public Service Commission as to which of two utilities should provide telephone service in a given area and it was there recognized that, on review, the courts examine to see whether the Commission has regularly pursued its authority, "including a determination of whether the order under review violated any right of the complainant under the U. S. or State Constitutions."

In these four cases—and others could be cited to the same effect—we have held that the Commission in the first instance and the courts on appeal could consider such matters as each of the five points of attack made by McGehee in the case at bar. It thus follows that McGehee's remedy through the proceedings before the Commission and on appeal, was full, adequate and complete in that he could urge every point that he alleged in the Chancery Court. That his remedy through the Commission's proceedings was expeditious is shown by the fact that the Commission's Order was made on July 5, 1961, affirmed by the Circuit Court on September 25, 1961, and an appeal to this Court was dismissed on February 19, 1962, because McGehee had not pursued his appeal expeditiously and within the time prescribed by law. The fact that McGehee lost his appeal to this court— questioning the Public Service Commission's Order—by

failing to prosecute it in due time, does not reinstate equity jurisdiction, because where a legal remedy has been lost, through failure to seek it at the proper time, equity will not for that fault entertain jurisdiction. 30 C. J. S. 346, ''Equity'' § 24.

We therefore affirm the decree dismissing this Chancery case, since the remedy at law was full, adequate, complete, and expeditious.

WARD, J., dissents.

PAUL WARD, Associate Justice, (Dissenting). In brief, my reasons for dissenting are set out below.

If McGehee can substantiate the allegations of his complaint in chancery court, it means money in his pockets. I assume that no one questions his right to try to prove his case against Mid South in a court of competent jurisdiction. The majority opinion denies McGehee this right unless the Arkansas Public Service Commission is in fact such a court.

To my mind, to state the above issue is to answer it. I have never heard it contended or even intimated that the Arkansas Public Service Commission was a court, in law or equity, to resolve legal differences between individuals or corporations.

It cannot be disputed that the Public Service Commission has only such powers as are given it by the legislature. Ark. Stats. § 73-115 contains that grant of powers which is ''all matters pertaining to the regulation and operation of—'' (naming the several utilities). Nowhere is the commission invested with the general powers of a court. Yet, the effect of the majority opinion is to invest the commission with the *general* jurisdiction of a duly constituted court.

The majority attempt to justify the result reached on the ground that McGehee had the right of appeal to the circuit court. The fallacy of that position is clearly revealed by an examination of the law governing trials before the commission and appeals therefrom. First, however, it is pertinent to point out that if McGehee is

permitted to exercise his constitutional right of trial by a court, the introduction of all evidence would be in accordance with rules developed by thousands of decisions over a long period of time. Yet, in a trial before the commission a radically different situation would obtain. Ark. Stats. § 73-127 provides that the commission "shall not be bound by the strict technical rules of pleading and evidence . . ." but it may use its own discretion. Can the effect of such a trial before the commission be erased or cured by an appeal to the circuit court? Definitely and clearly it cannot. Section 73-133 (Ark. Stats.) governs appeals from the commission to the circuit court of Pulaski County. After providing that such appeals are automatically allowed and that the secretary of the commission shall make a transcript of all proceedings and all evidence, the section then states: "The said circuit court shall thereupon review said order *upon the record* presented . . ." (Emphasis added.)

In *Southwestern Gas and Electric Company* v. *City of Hatfield*, 219 Ark. 515, 243 S. W. 2d 378, and *Woodruff Electric Cooperative* v. *Arkansas Public Service Commission*, 234 Ark. 118, 351 S. W. 2d 136, we recognized that the commission can exercise quasi judicial functions in matters incidental to the administration of the act. Those holdings, however, have no application here because McGehee's grievance with Mid South was real and in no way incidental to the merger.

For the reasons above noted I respectfully dissent.